594 A.2d 1115

**SUGARLOAF CITIZENS ASSOCIATION
and Karen Kalla and Beverly Thoms**

v.

**NORTHEAST MARYLAND WASTE DISPOSAL AUTHORITY
and Montgomery County, Maryland et al.**

**No. 32, Sept. Term, 1990.**

Court of Appeals of Maryland.

July 18, 1991.

Motions for Reconsideration Denied September 6, 1991.

See opinion by Eldridge, J. at 659.
Chasanow, J., dissents in part.

**644**

**646**

John Michael Adragna (Kathleen Winters Akerley, James R. Choukas–Bradley, Miller, Balis & O'Neil, P.C., all on brief), Washington, D.C., for petitioners.

Deborah E. Jennings (Susan D. Sawtelle, Gina M. Zawitoski, Stephen Stec, Piper & Marbury, Baltimore, Md., Clyde H. Sorrell, County Atty., Diane R. Kramer, Associate County Atty., Rockville, M.D.), all on brief, Ralph S. Tyler, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Jeffrey E. Howard, Asst. Atty. Gen., all on brief), Baltimore, Md., for respondents.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ.

ELDRIDGE, Judge.

The controversy in this case centers around the Prevention of Significant Deterioration (PSD) permit process required by the federal Clean Air Act, 42 U.S.C. § 7401 *et seq.*, and implemented by the State of Maryland through the Air Management Administration of the Maryland Department of the Environment. The purpose of the PSD permit process is to prevent degradation of the ambient air quality in areas where air quality is already superior to that required by the National Ambient Air Quality Standards. PSD approval is the first step in a three stage air quality permit process, and PSD approval is required before any potential source of air pollution can be located in a PSD area. The next stage in the air quality approval process requires an applicant to obtain a permit to construct, and the final stage requires the applicant to obtain a permit to

operate.[1]

The plaintiffs are two individual landowners, Beverly Thoms and Karen Kalla, who reside near Sugarloaf Mountain, and the Sugarloaf Citizens Association, a nonprofit corporation representing the interests of the citizens residing in the Sugarloaf Mountain area of Montgomery County, Maryland.[2] The defendants are Montgomery County, Maryland, the Northeast Maryland Waste Disposal Authority, and the Air Management Administration.

At issue in this case is a municipal solid waste incinerator which Montgomery County and the Northeast Authority propose to construct at Dickerson, Maryland, near Sugarloaf Mountain.[3] Sometime in 1988, Montgomery County and the Northeast Authority filed an application for PSD approval of the proposed facility with the Air Management Administration.[4] *See* COMAR 26.11.02.09.

On May 10, 1988, the plaintiffs sent a letter to George P. Ferreri, head of the Air Management Administration, requesting that the Administration hold an "adjudicatory"

---

1. COMAR 26.11.02.03 and 26.11.02.04 provide that PSD approvals, permits to construct, and permits to operate must all be obtained for sources of pollution located within PSD areas.

2. Sugarloaf Mountain is actually in Frederick County, Maryland, virtually adjacent to the Frederick County–Montgomery County border.

3. The defendants refer to the proposed facility as a "municipal solid waste resource recovery facility." They allege that the proposed facility will perform several functions including waste reduction, recycling, land filling and solid waste incineration. Each county in this State is required to adopt a comprehensive ten year plan which provides, among other things, for solid waste disposal, reduction and recycling. *See* Code (1982, 1987 Repl.Vol., 1990 Cum.Supp.), Environment Article, §§ 9–501 through 9–521. The proposed facility at issue is intended by Montgomery County to be part of its waste management plan.

4. The defendants contend that a completed application was filed in December 1988. The plaintiffs allege that an application was filed on April 13, 1988, but that it was not a completed application. The Air Management Administration ruled that the application was complete as of December 15, 1988.

hearing on the PSD application. The Citizens Association sent numerous additional requests for an adjudicatory hearing to the Administration, specifically on May 24, 1988, September 28, 1988, and September 13, 1989. By letter of October 13, 1989, Mr. Ferreri denied the request for an adjudicatory hearing. Furthermore, he stated that a public hearing at which interested persons could make comments would be held on November 18, 1989.

Pursuant to COMAR 26.11.02.10C, notices were published in newspapers in the Sugarloaf Mountain area, informing residents that the Air Management Administration would hold a public hearing on November 18, 1989, regarding the PSD application, and that comments would be received through the date of the hearing. A five hour non-trial type hearing was held on November 18th, and the record was kept open for an additional thirty days in order to receive any further comments.

Prior to the public hearing, on November 6, 1989, Sugarloaf Citizens Association filed in the Circuit Court for Baltimore City a complaint for a declaratory judgment, requesting the court to declare that the Air Management Administration was required to hold an "adjudicatory" hearing before taking final action on the PSD application filed by Montgomery County and the Northeast Authority.[5] A petition for a writ of mandamus was also filed.

The original defendants, Air Management Administration and the head of the Administration, George Ferreri, answered the complaint and petition. Subsequently, the Northeast Authority and Montgomery County moved to intervene as defendants, and filed an answer to the complaint and petition; intervention was granted.

---

**5.** The plaintiff's request for an "adjudicatory" hearing on the PSD application was actually a request that the hearing on the application be conducted as a contested case. *See* Code (1984, 1990 Cum.Supp.), §§ 10–201 through 10–217 of the State Government Article. Thus, the term "contested case" will be used throughout the opinion to refer to a hearing which provides trial type procedures, such as cross-examination.

Each defendant then filed a motion for summary judgment on two grounds, namely that the Citizens Association had no standing to sue because it lacked a property interest or special damages, and that a contested case hearing in PSD permit proceedings was not required by statute, regulation, or due process. After the defendants' motions for summary judgment were filed, the complaint and mandamus petition were amended to include the two individual plaintiffs, Ms. Thoms and Ms. Kalla.

On March 2, 1990, the circuit court held a hearing on the defendants' motions for summary judgment. The trial court entered an order on March 6, 1990, granting summary judgment in favor of the defendants. The court declared that a contested case hearing was not required by any law or by due process principles. The circuit court further held that the standing issue was moot because of its decision on the merits.

The Citizens Association and the individual plaintiffs then filed an appeal to the Court of Special Appeals. Before the case was heard in that court, Montgomery County, the Northeast Authority, and the Administration petitioned this Court for a writ of certiorari. The Citizens Association, Thoms, and Kalla filed a cross-petition. We granted both petitions and shall affirm.[6]

---

**6.** The appellees' petition for a writ of certiorari raised a single issue, namely whether the "law requires a contested adjudicatory hearing ... upon demand of a citizens' group opposing the issuance of an air permit for Montgomery County's resource recovery facility." No suggestion was made that the individual plaintiffs, Ms. Thoms and Ms. Kalla, lacked standing to bring the present action. As we have often stated, "[w]here there exists a party having standing to bring an action ... we shall not ordinarily inquire as to whether another party on the same side also has standing." *Board v. Haberlin,* 320 Md. 399, 404, 578 A.2d 215, 217 (1990). *See also State v. Burning Tree Club, Inc.,* 315 Md. 254, 291, 554 A.2d 366, 385, *cert. denied,* —— U.S. ——, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989); *Montgomery County v. Board of Elections,* 311 Md. 512, 516 n. 3, 536 A.2d 641, 643 n. 3 (1988); *State's Atty. v. City of Balto.,* 274 Md. 597, 602, 337 A.2d 92, 96 (1975).

In their briefs, however, the appellees seem to suggest that the individual plaintiffs lacked standing to bring this action. In light of

The issue in this case is whether the Air Management Administration, upon request, is required to hold a "contested case" hearing as defined by Maryland's Administrative Procedure Act (APA), Code (1984, 1990 Cum.Supp.), §§ 10–201 through 10–217 of the State Government Article, before ruling on an application for PSD approval.

A "contested case" is defined by the APA as follows:

"§ 10–201. Definitions.

\* \* \* \* \* \*

"(c) *Contested case.*—'Contested case' means a proceeding before an agency to determine:

(1) a right, duty, statutory entitlement, or privilege of a person that is required by law to be determined only after an opportunity for an agency hearing; or

(2) the grant, denial, renewal, revocation, suspension, or amendment of a license that is required by law to be determined only after an opportunity for an agency hearing."

Under the terms of the APA, when a proceeding meets the definition of a "contested case," the agency is required to provide certain trial type procedures during the course of the proceeding.[7]

---

our decision on the merits, we need not and do not reach any issue of standing.

7. The applicable APA provision is § 10–208 which states as follows:
"§ 10–208. Evidence.
"(a) *In general.*—(1) Each party in a contested case shall offer all of the evidence that the party wishes to have made part of the record.
(2) If the agency has any evidence that the agency wishes to use in adjudicating the contested case, the agency shall make the evidence part of the record.
(b) *Probative evidence.*—The agency may admit probative evidence that reasonable and prudent individuals commonly accept in the conduct of their affairs and give probative effect to that evidence.
(c) *Exclusions.*—The agency may exclude evidence that is:
(1) incompetent;
(2) irrelevant;
(3) immaterial; or

 It is well established, however, that the APA itself does not grant a right to a hearing. That right must come from another source such as a statute, a regulation, or due process principles. *See Prince George's County v. Blumberg,* 288 Md. 275, 295–296, 418 A.2d 1155, 1166–1167 (1980), *cert. denied,* 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981); *Eliason v. State Roads Comm.,* 231 Md. 257, 260, 189 A.2d 649, 650–651, *cert. denied,* 375 U.S. 914, 84 S.Ct. 211, 11 L.Ed.2d 152 (1963); *Warwick Corp. v. Dep't of Transp.,* 61 Md.App. 239, 244–245, 486 A.2d 224, 226 (1985); *Dunkel v. Elkins,* 325 F.Supp. 1235, 1246–1247 (D.Md.1971). *See also Modular Closet v. Comptroller,* 315 Md. 438, 445–447, 554 A.2d 1221, 1224–1225 (1989); *Donocam Assoc. v. Wash. Sub. San. Comm'n,* 302 Md. 501, 512, 489 A.2d 26, 31–32 (1985); *Murray v. Dep't of Soc. Services,* 260 Md. 323, 326–327, 272 A.2d 16, 18 (1971); *Md.–Nat'l Cap. P. & P. v. Friendship Hts.,* 57 Md.App. 69, 81, 468 A.2d 1353,

---

(4) unduly repetitious.

(d) *Rules of privilege.*—The agency shall apply a privilege that law recognizes.

(e) *Scope of evidence.*—On a genuine issue in a contested case, each party is entitled to:

(1) call witnesses;

(2) offer evidence, including rebuttal evidence;

(3) cross-examine any witness that another party or the agency calls; and

(4) present summation and argument.

(f) *Documentary evidence.*—The agency may receive documentary evidence:

(1) in the form of copies or excerpts; or

(2) by incorporation by reference.

(g) *Official notice of facts.*—(1) The agency may take official notice of a fact that is:

(i) judicially noticeable; or

(ii) general, technical, or scientific and within the specialized knowledge of the agency.

(2) Before taking official notice of a fact, the agency:

(i) before or during the hearing, by reference in a preliminary report, or otherwise, shall notify each party; and

(ii) shall give each party an opportunity to contest the fact.

(h) *Evaluation.*—The agency may use its experience, technical competence, and specialized knowledge in the evaluation of evidence."

1359, *cert. denied,* 300 Md. 89, 475 A.2d 1200 (1984). More-over, the statute or regulation which grants the right to a hearing may negate the fact that the hearing is to be a "contested case" or "adjudicatory" hearing. If the statutory or regulatory scheme does so, then the "contested case" provisions of the APA are inapplicable. *See, e.g., Board v. Secretary of Personnel,* 317 Md. 34, 562 A.2d 700 (1989).

The Air Management Administration, as part of the Maryland Department of the Environment, constitutes a State agency to which the provisions of the APA are fully applicable. *See* §§ 10–201(b) and 10–202 of the State Government Article. Furthermore, approval of a PSD permit application constitutes the granting of a license as set forth in the definition of "contested case." *See* § 10–201(d) of the State Government Article.

The Citizens Association and the individual plaintiffs contend that "[Code (1982, 1987 Repl.Vol.) ] Env't Art. § 2–404 and COMAR 26.11.02.10C legally obligate [the Air Management Administration] to provide an opportunity for a hearing on an application for PSD approval. Thus, the PSD approval application for the incinerator fully meets the definition of a 'contested case' under the APA." [8] Nevertheless, as pointed out above, the source which gives a right to a hearing may negate the fact that the hearing is to be a "contested case" or "adjudicatory" hearing. An examination of the entire statutory and regulatory scheme regarding the air quality permit process reveals that PSD approval is merely a preliminary or interlocutory requirement, prior to obtaining permission to actually construct and operate a potential source of pollution. Under COMAR 26.11.02.10C and the statutory permit scheme as a whole, the hearing required at the PSD permit stage is not a contested case hearing.

---

8. We note that, in this Court, the Citizens Association, Thoms, and Kalla do not contend that they have a due process right to a contested case hearing at the PSD permit approval stage.

As the Citizens Association and the individual plaintiffs state, COMAR 26.11.02.10C does provide for a "public hearing" on an application for PSD approval.[9] The provisions of the regulation itself, however, imply that the hearing required is not to be a contested case hearing. *See Board v. Secretary of Personnel, supra,* 317 Md. at 41–42, 562 A.2d at 703–704; *Eliason v. State Roads Comm., supra,* 231 Md. at 260–261, 189 A.2d at 651. *See also Holmes v. Robinson,* 84 Md.App. 144, 149–151, 578 A.2d 294, 296–297 (1990); *cert. denied,* 321 Md. 501, 583 A.2d 275 (1991);

---

**9.** COMAR 26.11.02.10C provides in pertinent part as follows:
".10 Action on an Application for a Permit and for Approval of a PSD. . . .

\* \* \* \* \* \*

"C. Except as provided in § B, above, or in COMAR 26.11.06.-06E, the following procedures apply to . . . any application for an approval of a PSD . . . Source:

(1) Within 10 working days, the Department will acknowledge receipt of an application for a permit to construct or an approval.

(2) After receipt of a completed application, the Department will:

(a) Make a determination to proceed with the application or deny the permit or approval;

(b) Upon a determination to proceed with the application, make available for public inspection in at least one location in the region in which the proposed source is to be constructed, a copy of all materials submitted by the applicant and a copy or summary of other materials considered by the Department.

(3) Notice of Opportunity to Request a Public Hearing. Within 10 days after notification by the Department of a determination to proceed with the application, the applicant shall publish a prominent advertisement in at least one newspaper of general circulation in the area concerned. The advertisement . . . shall include:

(a) A summary of the nature and location of the proposed source;

(b) The place where the materials required by § C(2)(b), above, are available for public inspection;

(c) A statement that the public has 10 days after the advertisement publication date to submit a written request for a public hearing on the application;

(d) A statement that the public has 30 days after the advertisement publication date to submit written comments; and

(e) The address to which the comments or request for a public hearing may be sent.

\* \* \* \* \* \*

"(7) Upon request by the Department, the applicant shall have 5 working days to respond to any comments received by the Department that would affect the issuance of a permit or approval."

*Parlato v. Md. Human Relations Comm'n,* 76 Md.App. 695, 700–703, 548 A.2d 144, 147–148 (1988); *cert. denied,* 314 Md. 497, 551 A.2d 867 (1989).

■ Although COMAR 26.11.02.10C specifies the procedures to be followed for a PSD permit hearing, in the alternative the regulation allows the Air Management Administration to substitute the procedures used in PSD proceedings at the federal level by the Environmental Protection Agency. Specifically, COMAR 26.11.02.10C(9) states: "In place of all of the procedures set forth in this regulation, the Department may use all or part of the procedures set forth in 40 CFR Part 52.21, 1987 edition, to review the application for an approval for any PSD source." In turn, 40 C.F.R. Part 52.21(q) mandates that the procedures found in 40 C.F.R. Part 124 shall be used in processing PSD applications. Part 124 provides for non-trial type public notice and comment hearings in cases of PSD permit applications. *See* 40 C.F.R. Part 124.10 to 124.15. Furthermore, Part 124.71(c) states that PSD permits may never be subject to an "evidentiary" hearing. Thus, the federal Environmental Protection Agency has clearly demonstrated its intent that federal PSD permit proceedings be subject only to non-contested case type hearings. Maryland has shown a similar intent by providing that in place of its own procedures for PSD proceedings, the federal procedures, in which only non-trial type hearings are available, may be substituted.[10]

---

**10.** The plaintiffs point out that 40 C.F.R. Part 124.1(e) states that "Part 124 does not apply to PSD permits issued by an approved State." Maryland has been approved since 1982 to administer the federal PSD program. *See* 40 C.F.R. Part 52.1073; 47 Fed.Reg. 7834 (E.P.A.1982).

Our interpretation of the statement in Part 124.1(e) differs from that of the plaintiffs. Rather than viewing Part 124.1(e) as an express prohibition on use of the federal PSD procedures in approved states, we believe that it is simply a recognition that approved states are not required to follow the federal Environmental Protection Agency's procedures. Maryland has expressly chosen to give the Air Management Administration the option of employing the federal procedures. *See* COMAR 26.11.02.10C(9).

■ The plaintiffs further contend that § 2–404 of the Environment Article obligates the Air Management Administration to hold a contested case hearing on PSD permit applications. Contrary to this contention, however, § 2–404, by its terms, is applicable only to proceedings involving *permits to construct* PSD sources. Section 2–404 provides in pertinent part as follows:

"§ 2–404. Ambient air quality control permits; notice; hearings.

"(a) *Construction of certain sources.*—The Department shall comply with the provisions in subsection (b) of this section before issuing a *permit to construct:*

(1) Any source which is required to obtain a permit to operate under regulations adopted under this subtitle; or

(2) Any source which is subject to federal standards under 40 CFR Part 60 (New Source Performance Standards), 40 CFR Part 61 (National Emission Standards for Hazardous Air Pollutants), or 40 CFR 52.21 (Prevention of Significant Deterioration).

(b) *Hearing and notice of intended issuance of permit.*—Before issuing a permit to construct for any source listed in subsection (a) of this section, the Department shall:

(1) Give public notice of the intended issuance of the permit; and

(2) Provide an opportunity for a public hearing in the county in which the proposed source will be located." (Emphasis added).

■ The statutory provision for a hearing at the construction permit stage confirms the conclusion that a contested case hearing is not required at the PSD approval stage.[11] Under the air quality permit scheme as a whole, the State has chosen the construction permit approval stage as the point at which a hearing is required by law, thus

---

11. Under the pertinent statutes, the construction permit stage is the only stage at which a statutory right to a hearing is provided.

meeting the definition of a contested case.[12] A hearing at the PSD approval stage is addressed only by COMAR 26.11.02.10C, which, by authorizing substitution of the federal procedures, negates the fact that the hearing required is a contested case hearing.

This interpretation of the statutory and regulatory scheme is reinforced by the fact that the construction permit stage is a more appropriate time for a contested case hearing than the PSD approval stage. Plaintiffs Thoms

---

**12.** The defendants argue that because § 2–404 provides for a "public" hearing, the hearing at the construction permit stage is also not a contested case hearing. This argument ignores many prior decisions of this Court which have treated the hearing so described as a contested case hearing. *See, e.g.,* Md.Comm'n on *Human Rel. v. Beth. Steel,* 295 Md. 586, 457 A.2d 1146 (1983) (Code (1957, 1979 Repl.Vol.), Art. 49B, § 11, provided for a "public hearing"); *Holy Cross Hosp. v. Health Services,* 283 Md. 677, 393 A.2d 181 (1978) (Code (1957, 1971 Repl.Vol., 1978 Cum.Supp.), Art. 43, § 568M(2), authorized agency to hold "public hearings"). Numerous other statutory provisions provide for "public" hearings which, under the statutory schemes, are clearly contested case hearings. *See, e.g.,* Code (1984, 1990 Cum.Supp.), § 5–580 of the Family Law Article; Code (1974, 1989 Repl.Vol., 1990 Supp.), §§ 6–507 to 6–509 of the Natural Resources Article; Code (1974, 1990 Repl.Vol.), §§ 9–306 to 9–308 of the Natural Resources Article; Code (1977, 1990 Cum.Supp.), §§ 5–210, 5–305 of the Transportation Article. Moreover, when the Legislature has desired to make clear that the "public" hearing provided by statute is not a contested case hearing, it has done so. *See* Code (1974, 1990 Repl. Vol.), § 8–806 of the Natural Resources Article (the statutory section grants the right to a public *"informational"* hearing to interested persons, and the right to a contested case hearing to persons specifically aggrieved).

The definition of a "contested case" in the APA is not at all dependent upon whether the proceedings are "public." A "contested case" proceeding ordinarily is not required by law to be open to the general public. *See* §§ 10–501(h) and 10–503(3)(iii) of the State Government Article. On the other hand, the public policy of the State generally favors public hearings. *See, e.g.,* § 10–502 of the State Government Article; *City of College Park v. Cotter,* 309 Md. 573, 581–582, 525 A.2d 1059, 1062–1063 (1987); *Carroll Co. Educ. Ass'n v. Bd. of Educ.,* 294 Md. 144, 147, 448 A.2d 345, 347 (1982). In our view, when the General Assembly by statute provides that a particular type of hearing be "public," it is simply mandating, in accordance with the general policy of the State, that the hearing be open to the public. The Legislature is not determining, by use or omission of the word "public," whether the hearing is a contested case hearing.

and Kalla allege that their property and health will suffer because of the operation of the proposed facility. The PSD approval, however, is simply a preliminary finding that the incinerator will not significantly harm the air quality in the Sugarloaf Mountain area generally. Although such approval is required in order to construct and operate the incinerator, the PSD approval itself does not authorize the construction or operation of the facility. As noted previously, Montgomery County and the Northeast Authority must engage in a permit application approval process at each of these stages also. Approval of the PSD permit has no immediate effect on any individual property rights, nor does it grant to the County the authority to begin constructing the proposed facility.

Conversely, the granting of a permit to construct would more immediately affect the individuals living around the proposed facility whose property might be harmed by the incinerator. The construction permit would create an immediate right in the County to begin building the facility. Clearly at this stage in the process, where actual harm may occur, a contested case hearing is more appropriate.

 Montgomery County is required by law to provide for solid waste disposal, reduction, and recycling. In order to carry out its obligations, the County must have appropriate facilities. In turn, the County must demonstrate through the three stage air quality permit process that a facility such as the proposed incinerator will comply with the provisions of the federal Clean Air Act. Allowing opponents the opportunity for full blown contested case hearings, with the accompanying right of judicial review, at each stage in the permit process would greatly interfere with a local government's ability to carry out its legal obligations and to protect the health and welfare of the citizens which it serves.[13]

---

**13.** The issue was raised as to whether the determinations made at the hearing at the PSD approval stage would be preclusive, under principles of res judicata or collateral estoppel, with regard to judicial

Therefore, the statutory and regulatory air quality permit scheme as a whole indicates that a PSD hearing is not a contested case hearing. *See State Dep't of A. & Tax. v. Clark*, 281 Md. 385, 392–396, 380 A.2d 28, 33–35 (1977) (entire statutory scheme for contesting tax assessments indicates that provisions allowing for challenges to assessments after the date of finality does not provide for a contested case).

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. APPELLANTS TO PAY COSTS.

## ON MOTION FOR RECONSIDERATION

ELDRIDGE, Judge.

The defendant Air Management Administration has filed a motion for reconsideration, stating that this Court's opinion "went much further" than was necessary and

"decided two matters not at issue: (a) that appellants are entitled to a 'contested case' at the 'permit to construct' stage, *and* (b) that 'contested case' hearings are required under various unrelated statutory schemes. * * * The State submits that this latter portion of the opinion,

---

review after a later decision following a construction permit hearing. It is unclear under Maryland law to what extent principles of res judicata and collateral estoppel apply to administrative decisions. *See White v. Prince George's Co.*, 282 Md. 641, 658, 387 A.2d 260, 270 (1978). Nevertheless, it is well settled that the doctrine is only applicable to agency decisions in which:

> " '[the] agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.' ... The threshold inquiry is whether the earlier proceeding is the essential equivalent of a judicial proceeding."

*William J. Davis, Inc. v. Young*, 412 A.2d 1187, 1194 (D.C.App.1980). *See also White v. Prince George's Co., supra*, 282 Md. at 658, 387 A.2d at 270; *Parker v. National Corp. for Housing Partnerships*, 619 F.Supp. 1061, 1065 (D.D.C.1985); 4 Davis, *Administrative Law Treatise* § 21:3 (2d ed. 1983).

Thus, the determinations made at the non-trial type hearing at the PSD stage would not be preclusive under principles of res judicata or collateral estoppel.

particularly the sweeping conclusions about statutes cited in n. 12 ..., should be reconsidered or revised." (Motion for Reconsideration, p. 2).

In addition to arguing that the above-described portion of the opinion was unnecessary and decided matters not at issue, the Air Management Administration asserts that the challenged portion of the opinion "obscures, if it does not entirely eliminate, [the] fundamental distinction" between "contested case hearings" and "legislative-type hearings" involving "issues of agency policy." *Ibid.* It is claimed that the opinion is "inconsistent with prior decisions of this Court, *Montgomery County v. Woodward & Lothrop, Inc.,* 280 Md. 686, 711–712 [376 A.2d 483, 494 (1977)], *cert. denied,* 434 U.S. 1067, [98 S.Ct. 1245, 55 L.Ed.2d 769] (1978); *Chevy Chase Village v. Montgomery County Board of Appeals,* 249 Md. 334, 345 [239 A.2d 740, 744–745] (1968)...." *Id.* at p. 3. Finally, the Air Management Administration argues that, if this Court should decline to delete the challenged portion of the opinion, the Court should "declar[e] that the rule of this case—that statutorily-labeled 'public hearings' may nevertheless be 'contested case' hearings—is a rule of purely prospective application...." *Id.* at p. 8.

Subsequently, the defendants Montgomery County and the Northeast Maryland Waste Disposal Authority also filed motions for reconsideration, advancing essentially the same arguments set forth by the Air Management Administration. Memoranda on behalf of amici curiae in support of the motions for reconsideration have also been filed.

For the reasons delineated below, we disagree with all of the above-mentioned arguments and shall deny the motions for reconsideration.

## I.

Preliminarily, we point out that the Air Management Administration mischaracterizes our opinion when it asserts that we decided "that appellants are entitled to a 'contested

case' at the 'permit to construct' stage...." (Petition for Reconsideration, p. 2). We held that the "construction permit approval stage [is] the point at which a hearing is required by law, thus meeting the [Administrative Procedure Act's] definition of a contested case." 323 Md. at 656–657, 594 A.2d at 1122. We decided nothing concerning the entitlement or standing *of these appellants* to obtain a contested case hearing at the construction permit stage. Moreover, we have made it clear in footnote 6 of the opinion that we are not reaching any issue of standing. Consequently, while one who has standing to be a party in a construction permit case before the agency is entitled to the opportunity for a contested case hearing at the construction permit stage, *see* Maryland Code (1984, 1990 Cum.Supp.), § 10–205 of the State Government Article, we did not decide whether the appellants in the present case fall within such category.

There is no merit in the defendants' arguments that the discussion in the opinion concerning the nature of the hearing at the construction permit stage was "unnecessary" and addressed a matter "not at issue." As the opinion points out, the plaintiffs in their brief specifically relied upon the statutory provision for a hearing set forth in Code (1982, 1987 Repl.Vol., 1990 Cum.Supp.), § 2–404 of the Environment Article, which provides for a hearing at the construction permit stage. The defendant Air Management Administration in its brief devoted ten pages to the nature of the hearing at the construction permit stage provided for by § 2–404. In addition, the relationship between the statutory provision for a hearing at the construction permit stage, and the COMAR provision for a hearing at the PSD approval stage, was thoroughly explored at the oral argument before this Court. Furthermore, our determination that there was an opportunity for a contested case hearing at the construction permit stage was part of the reasoning underlying our conclusion that a contested case hearing was

not required at the PSD approval stage.[1]

Similarly, there is no merit in the defendants' arguments that the discussion in footnote 12 of the opinion, relating to the word "public" in statutory provisions for hearings, was unnecessary and unrelated to a matter at issue. A major argument by the defendants in this case was that the adjective "public" before the word "hearing," both in the regulation and in § 2–404 of the Environment Article, meant that the hearing was not a contested case hearing. The entire discussion in footnote 12 was part of the Court's response to this argument. In fact, while asserting in their motions for reconsideration that the discussion in footnote 12 is unnecessary and relates to matters not at issue, the defendants elsewhere in their motions for reconsideration continue to argue that the word "public" in a statutory provision for a hearing means that the hearing is "informational, not adjudicatory." (Air Management Administration's Motion for Reconsideration, p. 5).

## II.

 In arguing that our opinion "obscures" or "eliminate[s]" the distinction between contested case hearings and "informational" or "legislative type" hearings involving

---

1. While the defendant Air Management Administration now asserts in its motion for reconsideration that the discussion in our opinion relating to the § 2–404 hearing at the construction permit stage was unnecessary and should be deleted from the opinion, the Air Management Administration earlier had a different point of view. It argued in its brief before this Court as follows (Brief of Air Management Administration, p. 12):

 "By its express terms, § 2–404 applies only to permits to construct. Brief of Appellants at 24. However, an application for a permit to construct has not yet been submitted for the proposed RRF. It, therefore, follows that § 2–404 simply cannot afford Appellants with the right to the adjudicatory hearing that they seek.

 "As explained in the next section, however, determining what type of public hearing is required by § 2–404 is crucial to determining what type of public hearing is required by the air quality control regulations that do pertain to PSD. The State, therefore, urges the court to decide whether § 2–404 affords environmental organizations or property owners with the right to an adjudicatory hearing before an air quality permit to construct is issued."

"issues of agency policy" (Air Management Administration's Motion for Reconsideration, p. 2), the defendants in their motions overlook the contested case provisions of the Maryland Administrative Procedure Act, §§ 10–201 through 10–216 of the State Government Article. They do not even cite the statute. Instead, their reliance is upon cases not involving the Maryland Administrative Procedure Act. Moreover, their only arguments as to why the hearing provided for in § 2–404 of the Environment Article, and the hearings referred to in footnote 12, are not contested case hearings are that the word "public" is used in the statutes providing for hearings and that the administrative practice has not been to treat the hearings as contested case hearings.[2]

Under Maryland administrative law, where a statute, regulation or due process principles provide that a particular administrative function be done after an agency hearing, it is the definition in the Administrative Procedure Act, and not the statute dealing with the underlying administrative function, which ordinarily determines whether the hearing is a "contested case" hearing. *Donocam Assoc. v. Wash. Sub. San. Comm'n,* 302 Md. 501, 512, 489 A.2d 26, 31 (1985). In other words, where a statute such as § 2–404 of the Environment Article requires an opportunity for an agency hearing prior to the issuance of a construction permit, the question whether such hearing is a "contested case" hearing ordinarily depends upon applying the definition of "contested case" in the Administrative Procedure Act to the agency activity, and not upon whether § 2–404 uses language indicating that the hearing is "adjudicatory."

---

**2.** With regard to the administrative practice, the defendants cite no regulations, administrative decisions, or other agency material to support their assertion. Moreover, an administrative practice is entitled to no weight where it is inconsistent with the statutory scheme. *See, e.g., Inlet Associates v. Assateague House,* 313 Md. 413, 432–433, 545 A.2d 1296, 1306 (1988); *Williams v. Criminal Injuries Comp. Bd.,* 307 Md. 606, 616, 516 A.2d 573, 578 (1986); *Supervisor v. Chase Associates,* 306 Md. 568, 579, 510 A.2d 568, 573 (1986); *Macke Co. v. Comptroller,* 302 Md. 18, 23, 485 A.2d 254, 256–257 (1984).

Otherwise, the definition of contested case in the Administrative Procedure Act, § 10–201(c) of the State Government Article, would be superfluous. In this regard, the Maryland Administrative Procedure Act differs from the administrative procedure acts in some other jurisdictions.[3]

The position of the defendants seems to be that the definition of "contested case" in the Administrative Procedure Act should be ignored, and that the sole issue is whether an application for a construction permit under § 2–404 of the Environment Article is "legislative-type" action or "adjudicatory" action. A similar argument was flatly rejected by this Court in *Donocam Assoc. v. Wash. Sub. San. Comm'n, supra,* 302 Md. 501, 489 A.2d 26. The issue in *Donocam* was whether a "public hearing"[4] by the Commission, prior to levying front-foot benefit charges on Donocam Associates' land, was a "contested case" hearing so that the Commission's decision was subject to judicial review under the Administrative Procedure Act.[5] The Commission, like the defendants in the case at bar, "argued ... that the setting of front-foot benefit charges is a legislative action and that such action is not reviewable as a contested case." 302 Md. at 512, 489 A.2d at 31. We disagreed with this position, stating that the alleged "legislative" nature of the " 'underlying function involved' " of setting front-foot benefit charges is not what determines whether a matter is a "contested case." *Ibid.* This Court went on to quote in part and apply the definition of "contested case" which was then set forth in the Administrative Procedure Act (302 Md. at 512, 489 A.2d at 31–32):

**3.** *See, e.g.,* the statutes reviewed in *Advanced Systems, Inc. v. Johnson,* 126 Ill.2d 484, 502–505, 129 Ill.Dec. 32, 40–41, 535 N.E.2d 797, 805–806 (1989); *Advertising Co. v. Bradshaw,* 48 N.C.App. 10, 15, 268 S.E.2d 816, 819 (1980).

**4.** 302 Md. at 506, 489 A.2d at 28.

**5.** The Administrative Procedure Act, § 10–215(a) of the State Government Article, provides that "[a] party who is aggrieved by the final decision in a *contested case* is entitled to judicial review of the decision as provided in this section." (Emphasis added).

"It is conceded, as indeed it must be, that the statute under which these assessments were made requires a hearing. As we have already noted, the Commission is an agency within the meaning of the Administrative Procedure Act. There is no dispute relative to the fact that Donocam Associates were aggrieved—their property has had assessments placed on it which work out to in excess of one-quarter of a million dollars, enough to aggrieve any property owner. The question becomes then whether 'the legal rights, duties, statutory entitlements, or privileges' of Donocam and persons similarly situated are required by law to be determined after an agency hearing.

"As we see it the agency is to determine rights and duties at this hearing."

*See also Newp. Nat. Bank v. Prov. Inst. For Savings,* 101 R.I. 614, 619–621, 226 A.2d 137, 140–141 (1967) (also rejecting an argument similar to that made by the defendants in the present case).

 Consequently, it is the application of the "contested case" definition in the Administrative Procedure Act which generally determines whether a proceeding is a contested case for purposes of the Administrative Procedure Act.[6]

 In the present case, § 2-401 of the Environment Article provides for a permit before a person, *inter alia,*

---

**6.** Although the Maryland Administrative Procedure Act's definition of "contested case" is not mentioned in the defendants' motions for reconsideration, the defendants' earlier briefs relied on Professor Davis's criticism of the somewhat similar definition of "contested case" set forth in the Model State Administrative Procedure Act recommended by the Commissioners on Uniform State Laws. Professor Davis stated (1 K. Davis, *Administrative Law Treatise* 39 (2d ed. 1978)):

"Section 1(2) defines 'contested case' to include a proceeding to determine legal rights 'required by law to be determined by the agency after an opportunity for hearing.' Yet § 3(2) requires 'oral hearing' for making rules, whenever requested by 25 persons. Does a rulemaking proceeding become a 'contested case' whenever an

"constructs ... a source that may cause or control emissions into the air." Section 2–402 contains certain exceptions, and § 2–403 mandates a fee for each permit issued. Section 2–404 requires that, before issuing a permit to construct, the Department of the Environment shall, *inter alia,* provide an opportunity for a hearing in the county where the particular source is to be located. Section 2–404, therefore, is a statute requiring an agency hearing before the agency may grant a permit to construct a specific facility at a specific location. Nothing in this scheme expressly or by implication negates a contested case hearing. *Cf., Board v. Secretary of Personnel,* 317 Md. 34, 562 A.2d 700 (1989).

In light of the definition of "contested case" in the Administrative Procedure Act, we reaffirm our earlier conclusion that the hearing on a permit application provided for by § 2–404 of the Environment Article is a contested case hearing. Prior to July 1, 1977, a "contested case" for purposes of the Maryland Administrative Procedure Act was "a proceeding before an agency in which the legal rights, duties, or privileges of specific parties are required by law or constitutional right to be determined after an agency hearing." Code (1957, 1978 Repl.Vol.), Art. 41, § 244(c). Even under this language, we took the position that where a hearing was provided for in connection with a

oral hearing is required? The answer is yes if the literal words are followed. Yet this makes nonsense of the definitions."
Professor Davis pointed out that the legislatures of some states have modified the definition of "contested case" to avoid this difficulty. *See also* footnote 3, *supra.* While the Maryland General Assembly has not modified this aspect of the definition, this Court has held, as explained in our opinion in this case, that the statute or regulation which grants the opportunity for a hearing may negate the fact that the hearing is to be a "contested case" hearing. Our holding in this regard should obviate the problem posed by Professor Davis. Nevertheless, the statute or regulation which provides for a hearing should not be construed to override the definition in the Administrative Procedure Act unless the statute or regulation does so expressly or by clear implication. To do otherwise would be to ignore the definition in the Administrative Procedure Act and treat § 10–201(c) as surplusage.

permit or license, the proceeding was a "contested case." *See, e.g., Prince George's Co. v. Blumberg,* 288 Md. 275, 294–296, 418 A.2d 1155, 1166–1167 (1980), *cert. denied,* 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981) (water and sewer permits); *Kaufman v. Taxicab Bureau,* 236 Md. 476, 479–480, 484, 204 A.2d 521, 523, 525 (1964), *cert. denied,* 382 U.S. 849, 86 S.Ct. 95, 15 L.Ed.2d 88 (1965) (application for taxicab operator's license).

Any doubts about the usual nature of required administrative hearings on applications for permits or licenses in Maryland were removed when the Administrative Procedure Act was revised by Ch. 884 of the Acts of 1978.[7] Ch. 884 represented a comprehensive revision of the Administrative Procedure Act which had been proposed by the Administrative Law Section of the Maryland State Bar Association. *See Transactions of the Maryland State Bar Association,* Vol. 83, Number 1, p. 45; Vol. 83, Number 2, p. 62. Among the changes brought about by Ch. 884 was the addition of new § 250A to Art. 41, which stated in relevant part:

"(a) The provisions of this act concerning contested cases apply when the grant, denial, or renewal of a license is required by law or constitutional right to be preceded by notice and opportunity for hearing."

 \* \* \* \* \* \*

Ch. 884 also added new §§ 244(d) and (e) to Art. 41, stating:

"(d) *'License'* includes the whole or part of any agency permit, certificate, approval, registration, charter, or sim-

---

**7.** In some jurisdictions with administrative procedure acts containing a definition of "contested case" similar to that in the pre–1978 Maryland statute, courts have indicated that hearings on applications for certain types of permits or licenses are informational and not contested case hearings. *See Public Interest v. State,* 152 N.J.Super. 191, 206–207, 377 A.2d 915, 922–924, *cert. denied,* 75 N.J. 538, 384 A.2d 517 (1977), cited by the defendants in the case at bar. While some language in the New Jersey opinion may support the defendants' argument, other language in the opinion suggests that the court was actually holding that the appellants in that case had no standing to demand a contested case hearing.

ilar form of permission required by law, but it does not include a license required solely for revenue purposes.

"(e) *'Licensing'* includes the agency process respecting the grant, denial, renewal, revocation, suspension, annulment, withdrawal, or amendment of a license."

The title to Ch. 884 makes it clear that one of the purposes of the statute was to provide that "certain procedures and other requirements must be met when a license is involved...." The substance of the above-quoted provisions is now contained in §§ 10–201(c) and (d) of the State Government Article.[8]

Section 2–404 of the Environment Article is a statute which requires the opportunity for a hearing prior to the grant of a permit. The proceeding under § 2–404, therefore, is a "contested case" under the clear language of the Administrative Procedure Act and the legislative purpose underlying that language.

## III.

As previously indicated, the defendants also assert that our opinion in the instant case is inconsistent with the opinions in *Mont. Co. v. Woodward & Lothrop, supra,* 280 Md. at 711–712, 376 A.2d at 497, and *Chevy Chase Village*

---

8. Sections 10–201(c) and (d) state as follows:

"(c) *Contested case.*—'Contested case' means a proceeding before an agency to determine:

(1) a right, duty, statutory entitlement, or privilege of a person that is required by law to be determined only after an opportunity for an agency hearing; or

(2) the grant, denial, renewal, revocation, suspension, or amendment of a license that is required by law to be determined only after an opportunity for an agency hearing.

(d) *License.*—'License' means all or any part of permission that:

(1) is required by law to be obtained from an agency;

(2) is not required only for revenue purposes; and

(3) is in any form, including:

(i) an approval;

(ii) a certificate;

(iii) a charter;

(iv) a permit; or

(v) a registration."

*v. Board of Appeals, supra,* 249 Md. at 345, 239 A.2d at 744–745. This argument is devoid of merit. Neither the *Woodward & Lothrop* case nor the *Chevy Chase* case involved the Maryland Administrative Procedure Act. The governmental agencies there involved were not subject to the Act. Moreover, the nature of the administrative proceedings in those cases was quite different from a proceeding under § 2–404 of the Environment Article or from proceedings under the statutes referred to in footnote 12 of our opinion in the instant case. *Woodward & Lothrop* involved comprehensive rezoning, under which the County Council "does not consider and determine adjudicative facts concerning particular parties" and "its focus is not on a single piece of property," *Mont. Co. v. Woodward & Lothrop, supra,* 280 Md. at 712–713, 376 A.2d at 498. The *Chevy Chase* case was also related to local zoning, and, with regard to the particular administrative proceeding involved, there was no statutory right to a hearing. *Chevy Chase Village v. Board, supra,* 249 Md. at 344, 239 A.2d at 744.

■ The portions of the *Woodward & Lothrop* and *Chevy Chase* opinions which, according to the defendants, are contrary to our opinion in the case at bar, contain general discussions of the difference between "informational" or "legislative-type" proceedings on the one hand and "adjudicatory" or "contested case" proceedings on the other. Where, however, an administrative proceeding is subject to the Administrative Procedure Act, where it is clearly a contested case within the meaning of that Act, and where the statutory scheme granting the right to a hearing does not negate the contested case nature of the proceeding, it is not particularly relevant that the administrative proceeding might, under general principles, be categorized as "legislative" in nature. *Donocam Assoc. v. Wash. Sub. San. Comm'n, supra,* 302 Md. at 512, 489 A.2d at 31–32; *Newp. Nat. Bank v. Prov. Inst. For Savings, supra,* 101 R.I. at 618–620, 226 A.2d at 140–141.

██ Moreover, even if a proceeding under § 2–404 of the Environment Article were not subject to the Maryland Administrative Procedure Act, and if the nature of the proceeding were governed by the general principles set forth in the *Woodward & Lothrop* case, one having standing to be a party to the § 2–404 proceeding would still be entitled to the opportunity for an adjudicatory hearing. An application for a permit is generally treated "as adjudication." 2 K. Davis, *Administrative Law Treatise* 433 (2d ed. 1979). Where the opportunity for a hearing is provided for in connection with an application for a permit, an adjudicatory or contested case hearing is usually required. 2 F. Cooper, *State Administrative Law* 484–490 (1965). Unlike the comprehensive rezoning involved in the *Woodward & Lothrop* case, a proceeding under § 2–404 of the Environment Article involves an application for a permit by a specific person or entity to construct a particular facility at a specified location. At issue may be the effect on air quality of that facility at that location. In the *Woodward & Lothrop* case, Chief Judge Murphy for the Court pointed out that "[t]he difference between adjudicative and legislative facts is not easily drawn...." 280 Md. at 711–712, 376 A.2d at 497. The Court, quoting from Professor Davis's treatise, went on (280 Md. at 712, 376 A.2d at 497):

"legislative facts 'do not usually concern the immediate parties but are general facts which help the tribunal decide questions of law and policy and discretion.' Davis, *Treatise*, § 7.02. The difference, broadly speaking, involves whether the decision is to be made on individual or general grounds."

Under these general principles, a proceeding under § 2–404 would be "adjudicative" and not "legislative."

IV.

██ Footnote 12 of our opinion in this case noted and rejected the defendants' argument that whenever a statute described an administrative hearing as "public," the hearing was informational and not a contested case hearing. In the

course of our discussion in footnote 12, we referred to numerous statutory provisions for "public" hearings which, under the statutory schemes, are clearly contested case hearings. The defendants now, in addition to asserting that the entire footnote 12 was unnecessary, complain about our characterizing three particular statutory schemes as providing for contested case hearings. They are as follows: (1) Code (1974, 1989 Repl.Vol., 1990 Supp.), §§ 6–501 through 6–511 of the Natural Resources Article, providing for an application for a permit to construct a facility in the coastal area; (2) §§ 9–306 through 9–308 of the Natural Resources Article, providing for an application for a permit to conduct certain activity on private wetlands; and (3) Code (1977, 1990 Cum.Supp.), §§ 5–304 through 5–305 and 5–210 of the Transportation Article, providing for an application for a license to operate an airport.

All three of these statutory schemes deal with an application for a permit to conduct a specified activity at a particular location, and all three provide for the opportunity for a "public" hearing on the application. Consequently, for the reasons previously set forth, the administrative proceedings would certainly seem to be adjudicatory. What makes it clear, however, that the General Assembly did not intend that these "public" hearings be "informational" or "legislative-type" hearings are the express provisions for judicial review in all three statutory schemes.

Thus, the administrative decision after the "public" hearing on an application for an airport license under §§ 5–305 and 5–210 of the Transportation Article is subject to judicial review "as provided by the Administrative Procedure Act" (§ 5–210(c)). Of course, judicial review under the Administrative Procedure Act is for contested cases only.[9] Policy determinations after "informational" hearings in other cases are not subject to judicial review under that Act.

---

9. In addition, one may bring a declaratory judgment action to challenge the validity of a regulation. Code (1984), § 10–125 of the State Government Article.

*Boyds Civic Ass'n v. Montgomery County,* 309 Md. 683, 702–704, 526 A.2d 598, 608–609 (1987); *Donocam Assoc. v. Wash. Sub. San. Comm'n, supra;* § 10–215(a) of the State Government Article.

The administrative decision on a private wetlands permit application is subject to review by the Board of Review of the Department of Natural Resources and thereafter to judicial review in "the circuit court of the county in which the land is located" (§ 9–308(a)). Although the statute provides for de novo judicial review, in *Dep't of Nat. Res. v. Linchester,* 274 Md. 211, 224–225, 228–229, 334 A.2d 514, 523–525 (1975), we held that, for constitutional reasons, judicial review under § 9–308 would be that applicable to contested cases, namely whether the administrative decision was arbitrary, capricious or unsupported by substantial evidence in light of the administrative record as a whole.

Section 6–509 of the Natural Resources Article provides "for judicial review of the Secretary's action on any application" for a permit to construct a facility in the coastal area. Judicial review is in the circuit court for the county where the facility is to be located (§ 6–509(a)), and the action may be brought by "an aggrieved party" or by certain government officials (§ 6–509(b)). As the Department of Natural Resources is an agency subject to the Administrative Procedure Act (§ 10–202 of the State Government Article), and as § 6–509 of the Natural Resources Article does not indicate otherwise, presumably judicial review under § 6–509 is in accordance with the Administrative Procedure Act. Such judicial review, as previously pointed out, is for "contested cases."

Even in actions not under the Administrative Procedure Act, administrative policy determinations after "informational" hearings are not subject to judicial review in the usual sense of that term. Instead, any court review would ordinarily be limited to determining whether the agency acted constitutionally, *Storch v. Zoning Bd. of Howard Co.,* 267 Md. 476, 487, 298 A.2d 8, 14 (1972); *Crown Central v.*

*City of Baltimore,* 258 Md. 82, 89–90, 265 A.2d 192, 196–197 (1970); *M. & C.C. of Balt. v. Biermann,* 187 Md. 514, 523, 50 A.2d 804, 808 (1947); or "whether the agency was acting within its legal boundaries," *Dep't of Nat. Res. v. Linchester, supra,* 274 Md. at 224, 334 A.2d at 523.

The above-discussed administrative proceedings dealing with permits to construct facilities in coastal areas, permits to conduct certain activity on private wetlands, and licenses to operate airports, are, particularly in light of the judicial review provisions, adjudicatory proceedings. They, along with the other administrative proceedings referred to in footnote 12 of our opinion, are examples of the General Assembly's describing contested case hearings as "public" hearings.

## V.

The defendants' last argument in their motions for reconsideration is that the "rule" that "statutorily-labeled 'public hearings' may nevertheless be 'contested case' hearings" should be "a rule of purely prospective application."

In another case where a similar request was made in a motion for reconsideration, we responded as follows (*Houghton v. County Com'rs of Kent Co.,* 307 Md. 216, 220–221, 513 A.2d 291, 293 (1986)):

"[T]he question of whether a particular judicial decision should be applied prospectively or retroactively, depends in the first instance on whether or not the decision overrules prior law and declares a new principle of law. If a decision does not declare a new legal principle, no question of a 'prospective only' application arises; the decision applies retroactively in the same manner as most court decisions.... *Potts v. State,* 300 Md. 567, 577, 479 A.2d 1335 (1984); *State v. Hicks,* 285 Md. 310, 336–338, 403 A.2d 356 (1979) *Wiggins v. State,* 275 Md. 689, 719–732, 344 A.2d 80 (1975) (dissent).

\* \* \* \* \* \*

Just recently, in *Potts v. State, supra,* 300 Md. at 577, 479 A.2d 1335, Chief Judge Murphy pointed out for this Court that 'where a decision has applied settled precedent to new and different factual situations, the decision always applies retroactively.'

"Our holding in the case at bar ... is not 'novel' and does not overrule any earlier cases in this Court."

For the same reason, we disagree with the defendants' "prospective application" argument in the present case.

MOTIONS FOR RECONSIDERATION DENIED.

CHASANOW, J., would grant the motions insofar as they relate to footnote 12.