578 A.2d 294

John HOLMES, et al.

v.

Bishop L. ROBINSON.

No. 319, Sept. Term, 1990.

Court of Special Appeals of Maryland.

Aug. 30, 1990.

Certiorari Denied Jan. 4, 1991.

Witold J. Walczak, Baltimore, for appellants.

Emory A. Plitt, Jr., Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Argued before GARRITY, BLOOM and KARWACKI, JJ.

KARWACKI, Judge.

The parties to this expedited appeal, pursuant to Rule 8–207, have submitted the following agreed statement of facts.

1. Appellants in the above-captioned case are, and at all relevant times hereinafter mentioned were, eligible persons

(as defined by Md.Ann.Code Article 31B, section 1) at the Patuxent Institution.

2.  Appellants were approved for work release by the Patuxent Board of Review (hereinafter "Board") prior to December, 1988, pursuant to the procedures established in Patuxent Institution Regulation (hereinafter "PIR") 240–11 (September 17, 1987).

3.  Subsequent to approval for work release, each appellant signed a contractual agreement with Patuxent "... specifying the rules, regulations and conditions of the work release ..." pursuant to PIR 155–4 (August 8, 1988).

4.  On December 1, 1988, the Board and appellee Robinson suspended the work release program, thereby denying appellants all of the rights, privileges and amenities that were characteristically attendant to work release at Patuxent.

5.  Subsequent to the revocation, the Board never conducted a hearing for the appellants to assess their work release statuses.

6.  On March 20, 1989, the Governor signed into law as an emergency measure 1989 Md. Laws Ch. 6, wherein the appellee was directed to review all Patuxent work release inmates (appellants in this action) for the purpose of determining whether they are "a threat to public safety." (Section five).

7.  In the course of the review process directed by 1989 Md. Laws Ch. 6, Section five, Robinson instructed four Patuxent administrators to conduct hearings for each of the appellants and to make recommendations to him.

8.  After serving notice of the hearings upon the appellants, and permitting them to review the evidence gathered by the four person review team, audio taped hearings were conducted for each appellant during the summer of 1989.

9.  The aforementioned hearings were the first and only ones accorded appellants subsequent to the December 1, 1988 suspension of the work release program.

10. The tapes of the hearings and all institutional records of the appellants were forwarded to Robinson, along with the recommendations of the administrators. After a review of these materials, Robinson determined that the appellants constituted "a threat to public safety," in accordance with 1989 Md. Laws Ch. 6, Section five, and therefore they should not be reinstated into the work release program.

11. It is from Robinson's decisions refusing to reinstate appellants in the work release program that appellants filed timely Appeals and Petitions for Reversal of Administrative Agency Action in the Circuit Court for Howard County.

12. The Petitions were for all relevant purposes identical.

13. The appeals to the Circuit court were filed pursuant to the Maryland Administrative Procedure Act, Md. State Gov't Code Ann. section 10–215.

14. Robinson moved to dismiss the appeals on the ground that the Administrative Procedures Act did not confer subject matter jurisdiction on the court to consider appellants' various legal challenges to Robinson's decisions on work release.

15. After submission of legal memoranda by both parties and oral argument on January 31, 1990, the Circuit Court entered final judgment in the cases by granting Robinson's Motions to Dismiss on the ground that the Maryland Administrative Procedure Act did not confer jurisdiction on the court to consider the appeals.

Appellants argue that they are entitled to judicial review of appellee's decision not to reinstate them in the work release program, citing § 10–215(a) of the State Gov't Code Ann., which provides that "A party who is aggrieved by the final decision in a contested case is entitled to judicial review of the decision as provided in this section." Thus, appellants' right to judicial review depends on whether the proceeding in which appellants were denied reinstatement in

the work release program was a "contested case." This term is defined by § 10–201(c):

(c) *Contested case.*—"Contested case" means a proceeding before an agency to determine:

(1) a right, duty, statutory entitlement, or privilege of a person that is required by law to be determined only after an opportunity for an agency hearing;

Appellants contend that this is a "contested case" because their placement on work release constitutes a "right, duty, statutory entitlement, or privilege," and because an agency hearing is required by both Patuxent regulations and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Appellee does not dispute that work release constitutes a "right, duty, statutory entitlement, or privilege"; the issue, therefore is whether hearings to evaluate appellants' eligibility for the work release program were required by either Patuxent Regulations or the Due Process Clause. We will consider each of these arguments in turn.

## I.

Appellants' argue that their hearings were held pursuant to Patuxent Regulation 240–5.V.B.3, which they contend requires a hearing "whenever a change is contemplated in an inmate's work release status."[1] This hearing

---

1. Patuxent Institute Regulation 240–5.V.B. provides:
   B. *Informal Hearings required*—The
   following actions shall be heard by the Board of Review at Regular session, in an informal hearing, and in the presence of the interested [eligible person].
   1. Annual Review
   2. Parole recommendations
   3. Status recommendations
   4. Special Eligibility reviews
   5. Complete Release recommendations
   6. Any other matter deemed by the Board of Review to require the presence of the interested [eligible person]

requirement, appellants argue, makes this proceeding a "contested case" entitling appellants to judicial review.[2]

The flaw in this argument is that the agreed statement of facts stipulates that the hearing was held pursuant to Ch. 6, § 5 of the Laws of 1989, not pursuant to any Patuxent Regulations. *See* ¶ 6–10, Agreed Statement of Facts, *supra*. Chapter 6, § 5 was enacted less than four months after the Patuxent work release program was suspended, "... [f]or the purpose of ... requiring the [appellee] to review the status of work release and leave inmates at Patuxent Institution before reinstituting the work release and leave programs." Ch. 6, Laws of 1989 at 1205. Therefore, since "[t]he primary source from which the power and right of judicial review may arise is the enabling statute which defines the scope of the particular agency's power," *Parlato v. Maryland Comm'n on Human Relations*, 76 Md.App. 695, 698, 548 A.2d 144 (1988), the proceedings in question are contested cases only if Ch. 6, § 5 requires that appellants be given a hearing. Chapter 6, Section 5 provides:

> AND BE IT FURTHER ENACTED, That before reinstituting the work release and leave programs at Patuxent Institution, the Secretary of Public Safety and Correctional Services shall promptly review the status of each eligible person who had work release or leave status before the programs were suspended to determine if the eligible person is a threat to public safety.

While appellee is required to "review the status of each eligible person ... to determine if the eligible person is a threat to public safety," there is no requirement in the

---

**2.** Appellants posit in their brief that "[i]t is clear that agency rules and regulations requiring a hearing suffice to establish a contested case" and cite *Prince George's County v. Blumberg*, 288 Md. 275, 418 A.2d 1155 (1980), cert. denied, 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981), *Warwick Corp. v. Department of Transp.*, 61 Md.App. 239, 486 A.2d 224 (1985) and *Maryland–Nat'l Capital Park and Planning Comm'n v. Friendship Heights*, 57 Md.App. 69, 468 A.2d 1353 cert. denied, 300 Md. 89, 475 A.2d 1200 (1984).

statute that a hearing be held. Therefore, this is not a "contested case" and there is no statutory authorization for an appeal to the circuit court. As the Court of Appeals has held, "[a]n appellate right is entirely statutory in origin and no person or agency may prosecute such an appeal unless the right is conferred by statute." *Criminal Injuries Compensation Bd. v. Gould,* 273 Md. 486, 500, 331 A.2d 55 (1975). *See also Warwick Corp. v. Department of Transp.,* 61 Md.App. 239, 244, 486 A.2d 224 (1985) ("judicial review of final actions of an administrative agency by way of an appeal must be specifically authorized by statute").

## II.

■ Appellants' second argument is premised on the Due Process Clause. Specifically, appellants contend that Patuxent Institution's regulations, policies and past practices created for them a constitutionally protected liberty interest in their work release status that is entitled to the protections of the Due Process Clause.

■ The Supreme Court has recognized that in some cases prison regulations may create enforceable liberty interests. *See, e.g., Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987) (protected interest in parole); *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (protected interest in freedom from involuntary transfer to a mental hospital); *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (protected interest in good-time credits). But such an interest is created only when regulations place "substantive limitations on official discretion." *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747 75 L.Ed.2d 813, 823 (1983). In *Olim,* the Supreme Court was faced with the question of whether a prisoner incarcerated in Hawaii had a constitutionally protected liberty interest in being housed in a prison located in that State. Because the Court found that "the prison Administrator's discretion to transfer an inmate is completely unfettered," *id.,* it held that "Hawaii's prison regulations place no substantive limitations on offi-

cial discretion and thus create no liberty interest entitled to protection under the Due Process Clause." *Id.* The Court explained:

[A] State creates a protected liberty interest by placing substantive limitations on official discretion. An inmate must show "that particularized standards or criteria guide the State's decisionmakers." If the decisionmaker is not "required to base its decisions on objective and defined criteria," but instead "can deny the requested relief for any constitutionally permissible reason or for no reason at all," the State has not created a constitutionally protected liberty interest.

*Id., quoting Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 467, 101 S.Ct. 2460, 2466, 69 L.Ed.2d 158, 167 (1981) (Brennan, J., concurring) (citations omitted).

In *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989), the Court again was confronted with the issue of whether a constitutionally protected liberty interest was created in a prison setting. In ruling that Kentucky prison regulations did not afford an inmate a liberty interest in receiving visitors, the Court discussed its approach to this problem:

We have also articulated a requirement implicit in our earlier decisions, that the regulations contain "explicitly mandatory language," i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow, in order to create a liberty interest."

*Id.,* 490 U.S. at ——, 109 S.Ct. at 1910, 104 L.Ed.2d at 516. While the Court found that the Kentucky prison regulations "do provide certain 'substantive predicates' to guide the decisionmaker," *id.,* it was not sufficient:

The regulations at issue here, however, lack the requisite relevant mandatory language. They stop short of requiring that a particular result is to be reached upon a finding that the substantive predicates are met. The Reformatory Procedures Memorandum begins with the caveat that "administrative staff reserves the right to allow or disal-

low visits," and goes on to note that "it is the policy" of the Reformatory "to respect the right of inmates to have visits." This language is not mandatory.

*Id.*, 490 U.S. at ——, 109 S.Ct. at 1910–11, 104 L.Ed.2d at 517 (footnote omitted).

Appellants are unable to identify any specific statutory provision or Patuxent regulation that contains the mandatory language necessary to create a liberty interest. Instead they rely upon "the net effect of Patuxent's regulatory scheme," "Patuxent's past practice" and "Patuxent's underlying philosophy." Appellants have ignored Article 27 § 700A of Md.Code Ann., which authorizes the work release program. Significantly, subsection (b) specifically grants appellee unfettered discretion in revoking an inmate's work release status: "At any time after approval has been granted, it may be revoked for any reason by the Commissioner." Where state law " 'imposes no conditions on the discretionary power [of the prison official]', there [is] no basis for invoking the protections of the Due Process Clause." *Olim v. Wakinekona, supra*, 461 U.S. at 249, 103 S.Ct. at 1747, 75 L.Ed.2d at 822, *quoting Montanye v. Haymes*, 427 U.S. 236, 243, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466, 472 (1976). Therefore, we hold that appellants were not entitled under the Due Process Clause to a hearing on whether their work release statuses should have been reinstated by appellee. Consequently, the reviews of appellants conducted by appellee pursuant to Chapter 6, § 5 of the Acts of 1989 were not contested cases, and the court was without subject matter jurisdiction to consider appeals from appellee's decisions.

JUDGMENTS AFFIRMED;

COSTS TO BE PAID BY APPELLANTS.