234

655 A.2d 1326

**SECURITY MANAGEMENT CORP.**

v.

**BALTIMORE COUNTY, MARYLAND, et al.**

**No. 929, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

March 31, 1995.

Thomas C. Beach, III (Michael D. Oliver, Steven E. Tiller and Whiteford, Taylor & Preston, on the brief) Baltimore, for appellant.

Michael G. Comeau, Asst. County Atty. (Stanley J. Schapiro, County Atty. and Michael McMahon, Asst. County Atty., on the brief), Towson, for appellee, Baltimore County.

Peter Max Zimmerman (Carole S. Demilio, on the brief), Towson, for appellee, People's Counsel.

Argued before WILNER, C.J., and DAVIS and HARRELL, JJ.

WILNER, Chief Judge.

Appellant is upset that its property, located in the Loch Raven watershed in Baltimore County, is included in the county's RC-4 resource conservation zone and therefore is limited in its development potential. It claims that inclusion of its property in that zone is unconstitutional for a variety of reasons. We find no merit to its assertions and shall therefore affirm the judgment of the Circuit Court for Baltimore County dismissing its complaint.

## THE COUNTY ZONING LAW

Pursuant to the Constitutional and statutory authority vested in it as a chartered county, Baltimore County has enacted laws governing planning and zoning in the county. The county law provides two methods of rezoning: quadrennial comprehensive rezoning and individual reclassification.

Every four years, the existing zoning on all land in the county is reviewed. The process begins with a review of the zoning regulations and maps by the county Planning Board, which makes a preliminary report to the County Council. Any recommended changes in the zoning regulations or maps are included in that report. Through public hearings, interested citizens are then afforded an opportunity to comment on and object to the preliminary recommendations. Following those public hearings, the Planning Board submits to the Council a final report, including proposed zoning regulations and maps. The public then has three months in which to raise issues before the Council; the Planning Board has another month thereafter to make its comments. Finally, after one or

more public hearings, the County Council, by ordinance, adopts regulations and maps. *See*, in general, Baltimore County Code, §§ 26–123––26–125.

In addition to this quadrennial comprehensive rezoning, the County Code allows individual landowners to petition the County Board of Appeals for a reclassification of their properties. Baltimore County Code, § 2–356. A reclassification, being in derogation of the legislative determination made in the most recent comprehensive rezoning, is normally dependent upon a showing either that the existing classification was a "mistake" or that there has been a sufficient change in circumstances since the last comprehensive rezoning to warrant the requested reclassification.

In 1976, as part of the comprehensive zoning process, the County Council created four resource conservation zones. In creating those zones, the County Council found, generally, that development in the rural areas of the county had been taking place at an increasing rate and without the framework of a land use plan or other planning components; that, as a result, the development "has formed very undesirable land use patterns," that a significant amount of "urban sprawl" was occurring along highways in the rural areas as tracts immediately fronting along the highways were "lotted off;" and that such development was detrimental in a number of respects, including the loss of "critical watershed areas."

Among the stated purposes of these zones were discouragement of the then-existing land use patterns, creation of a framework for orderly development, provision of "suitable" areas for rural-suburban development, protection of natural and man-made resources from the compromising effects of development, protection of areas desirable for more intensive future development by regulating undesirable forms of interim development, and conservation of land and water resources.

The four resource conservation zone created as part of the county zoning—agricultural (RC–2), deferral of planning and development (RC–3), watershed protection (RC–4), and rural-residential (RC–5)—still exist. The land at issue here is, and

since 1976 has been, in the RC–4 zone. The specific purpose of that zone, as set forth in the Baltimore County Zoning Regulations (BCZR § 1A03.1), is to provide for the protection of water supplies of metropolitan Baltimore and neighboring jurisdictions by preventing contamination through unsuitable types or levels of development in their watersheds.

Although there have been amendments to the BCZR governing the RC–4 zone since 1976, the maximum gross density allowed for that zone has remained fixed—0.2 dwelling units per acre, i.e., one house for every five acres. BCZR § 1A03.4B. As an alternative to that number of dwelling units, however, the zoning regulations provide for certain other uses permitted either by right or by special exception. Included among the uses permitted by right are farms, public schools, and transit facilities; included among the uses permitted by special exception are antique shops, camps, community buildings, churches, restaurants, and offices.

## THE ISSUES

In 1974, appellant, a Maryland corporation in the business of developing and managing real estate, acquired through stock acquisition and merger a 391–acre tract, of which the 215–acre parcel at issue here was a part. At some point, the other 176 acres were rezoned to DR–3.5 (Density Residential—3.5 dwelling units per acre) and developed into a residential community known as Hunters Run.

In 1992, during the comprehensive zoning process, appellant submitted to the County Council a petition requesting that the Council rezone the remaining 215 acres from RC–4 to DR–16 (Density Residential—16 dwelling units per acre) and BL (Business–Local). Under the plan submitted with the petition, appellant proposed to build approximately 3,000 units, including townhouses, multi-family homes, and elderly housing. Under the current RC–4 zoning, apart from the other uses permitted of right or by special exception, appellant would be able to build only 43 dwelling units, which could be clustered.

In its petition, appellant asserted that the community would be phased in over a 15–year period, at the rate of 200 units per year, that it would be an "environmentally sensitive" community meeting all applicable environmental requirements, that it was in accord with the county master plan, that the public school system was adequate to accommodate children from the proposed community, and that it would actually improve water quality in the area. Notwithstanding these assertions, some of which are conclusory in nature, the Council denied appellant's petition and left the property in the RC–4 zone.

In April, 1993, appellant filed the complaint leading to this appeal, alleging that the Council's refusal to rezone the property in the manner it had requested violated appellant's Federal and State Constitutional rights. Specifically, it urged that it was being denied equal protection and substantive due process in contravention of the Fourteenth Amendment, 42 U.S.C. § 1983, and Md. Decl. of Rts., art. 24, and that retention of the property in the RC–4 zone constituted a "taking" within the meaning, and in violation, of the Fifth and Fourteenth Amendments, 42 U.S.C. § 1983, and art. III, §§ 40 and 40A of the Maryland Constitution. Upon motion by the County and by People's Counsel, who had intervened in the case, the court dismissed the complaint for failure to state a claim on which relief could be granted.

In October, 1993—prior to entry of the order dismissing the complaint—appellant filed a petition with the Board of Appeals for a reclassification of the property. It then sought, and obtained, a postponement for the asserted purpose of submitting a revised plan. As of the date of oral argument before this Court, in February, 1995, appellant had neither submitted a revised plan nor requested further consideration by the Board of its initial petition, which is still pending.

## DISCUSSION

### Introduction

As noted, appellant has raised a number of discrete Constitutional issues, which we shall discuss. At oral argument,

those arguments essentially coalesced into the assertion that, if a person buys property that he believes will eventually be in the path of development and it later turns out that the property is in the path of development, he has a Constitutional right to have the property rezoned in order that he may develop it as he wishes. That is not the law.

Before addressing the particular Constitutional challenges raised by appellant, we shall consider briefly appellees' argument that they are all premature because appellant has failed to exhaust an available administrative remedy, i.e., consideration of its petition for reclassification, which it deliberately had postponed. Appellant, of course, contends that, under *Patsy v. Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) and its progeny, it is not required to exhaust administrative remedies when pursuing a claim under 42 U.S.C. § 1983. Appellees rejoin that (1) that doctrine applies to alleged violation of individual, personal rights and not to zoning cases, and (2) in any event, the case is premature under the "ripeness" doctrine.

These are interesting questions, but, as they are not really jurisdictional in nature, we shall pass over them. We believe that there is utterly no merit to the substance of appellant's arguments, and we shall affirm on that basis. For purposes of this appeal, therefore, we shall assume, although we do not hold, that appellant was not required to pursue its petition for reclassification to conclusion before filing this lawsuit.

### Taking Claims

■ Appellant makes both a procedural and a substantive complaint with respect to its "taking" claim. First, it avers that, "[except in unusual cases," a court should not dismiss a constitutional claim for a taking of property where the complaint raises "complicated factual issues concerning the Appellant's actions and justifications for denying a zoning reclassification." Naturally, it contends that its complaint in fact raises such complicated issues. Substantively, it argues that the proper test for determining whether State regulation constitutes a "taking" is whether the regulation reasonably advances

legitimate State interests or denies an owner "economically viable use of his land." *See Nollan v. California Coastal Comm'n,* 483 U.S. 825, 834, 107 S.Ct. 3141, 3147, 97 L.Ed.2d 677 (1987).

Keeping in mind that this appeal arises from the granting of a motion to dismiss, rather than a summary judgment or judgment entered after trial, we need to look at, and confine ourselves to, the allegations in the complaint. They are sparse, indeed.

After alleging how and when appellant acquired the property, the fact that it filed a petition for rezoning, and that it "documented" all the nice things it says about the planned community, appellant avers that, "[n]otwithstanding its earlier rezoning and/or permitting of development of rural and/or resource conservation properties adjacent to or in close proximity to The Property and notwithstanding the appropriate and beneficial use to which [appellant] planned to put The Property, The Council ... denied [appellant's] request to change the zoning ... from RC–4 to DR–16 and BL." In Counts V and VI, based respectively on the Fifth Amendment and the Maryland Constitution, appellant contends that a taking has resulted "due to the fact that, without proper rezoning, [appellant] has been denied the economically viable use of the Property and has suffered substantial diminution in its investment-backed expectations as owner of such property." The only addition to this explanation is in Count VII, based on the Fourteenth Amendment, where it claims that the County's action was arbitrary and capricious.

Taking these allegations as they are, it is clear that no Constitutional taking has been adequately alleged. Nor have any "complicated factual issues" been alleged sufficient to make a motion to dismiss inappropriate.

We reject as absurd the contention that the creation of an RC–4 zone, as defined in the BCZR, and the inclusion within it of property in an important metropolitan watershed do not substantially advance a legitimate State interest. The purpose of the zone is set forth in the ordinance creating it; we

are aware of no case—and none has been cited to us—holding that the conservation of watersheds and the limitation of development in those watersheds is not a legitimate State interest. Whether, to achieve that purpose and protect that interest, particular land in a watershed should remain free from intensive development is quintessentially a legislative judgment call.

The issue, really, is whether continued inclusion of the property in the low-density zone deprives appellant of a Constitutionally-protected right. In *Baltimore City v. Borinsky,* 239 Md. 611, 212 A.2d 508 (1965), the Court adopted a strict and exacting standard in this regard, holding, at 622:

"If the owner affirmatively demonstrates that the legislative or administrative determination deprives him of all beneficial use of the property, the action will be held unconstitutional. *But the restrictions imposed must be such that the property cannot be used for any reasonable purpose.* It is not enough for the property owners to show that the zoning action results in substantial loss or hardship."

(Emphasis added).

Appellant urges that, under more recent Supreme Court pronouncements, that is no longer the test. It seizes upon the articulation in *Nollan v. California Coastal Comm'n, supra,* 483 U.S. 825, 107 S.Ct. at 3142–43; *Keystone Bituminous Coal Ass'n v. De Benedictis I,* 480 U.S. 470, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987); *Lucas v. South Carolina Coastal Council,* —— U.S. ——, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992); and *Dolan v. City of Tigard,* —— U.S. ——, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994), that a regulation may constitute a taking if it denies the owner of "economically viable use of his land." At least implicit in its argument is that it is possible for an owner to be denied the economically viable use of his land even though he is not denied "all beneficial use."

The simple and most direct answer to this assertion is that appellants have overlooked the important modifier "all." In *Lucas,* the Supreme Court made clear that the standard was whether the regulation "denies *all* economically beneficial or

productive use of land." (Emphasis added). —— U.S. at ——, 112 S.Ct. at 2893. The Court later supplied its own emphasis to the word "all" when it stated, at ——, 112 S.Ct. at 2895, that an owner suffers a taking when he has been called upon "to sacrifice *all* economically beneficial uses in the name of the common good, that is to leave his property economically idle." In *Waters v. Montgomery County,* 337 Md. 15, 650 A.2d 712 (1994), the Court noted that, under *Lucas,* a regulation does not go "too far" unless it "denies *all* economically beneficial or productive use of land." (Emphasis added). *Waters, supra,* at 40, 650 A.2d 712, quoting from *Lucas,* —— U.S. at ——, 112 S.Ct. at 2893. It then reiterated the *Borinsky* test, confirmed in *Pitsenberger v. Pitsenberger,* 287 Md. 20, 410 A.2d 1052 (1980) that "[t]o constitute a taking in the constitutional sense ... the state action must deprive the owner of all beneficial use of the property."

The *Borinsky* articulation is entirely consistent with the Federal standard explained in *Lucas,* and it is clear from the pleading, read in light of the county zoning law, that appellant has not been deprived of all economically beneficial or productive use of its land; inclusion of the property in the RC–4 zone has not left it economically idle. Appellant has therefore not pled a Constitutional taking under either the Maryland or the Federal Constitution.

## Equal Protection

The sole basis for appellant's equal protection complaint is that the County treated its rezoning request differently from the way it treated similar requests by others. It contends that tracts located in close proximity to its property, which were previously zoned rural or resource conservation, were "rezoned or otherwise permitted to develop."

 Because appellant's claim is not based on an "infringement of a fundamental right or discrimination against a suspect class," we review the Council's actions under the rational basis test. *Silver v. Franklin Township Board of Zoning Appeals,* 966 F.2d 1031, 1036 (6th Cir.1992). The

rational basis test requires appellant to prove that (1) the County treated it differently than it treated others similarly situated, and (2) the disparate treatment did not bear a rational relationship to a legitimate interest.

■ Appellant alleges in paragraph 11 of its complaint, entitled "Facts Common to All," that

"[t]he tracts of previously rural and/or resource conservation property surrounding The Property or in close proximity to The Property which were rezoned or were otherwise permitted to develop became the tracts upon which Loveton Farms residential development, Loveton Center business development, Broadmead residential development, Hunters Run residential development, North Park business development, Hunt Valley Mall, Hunt Valley Business Center, Shawan business development, Masonic Home of Maryland and Highlands Corporate Office Park were developed and built."

In the substantive portion of its complaint, appellant alleges that the County

"has treated [appellant's] request to rezone the Property from RC–4 to DR–16 and BL, differently than it treated similar requests by others, and, specifically has permitted those properties identified in paragraph 11, and others, to be developed and/or rezoned from rural and/or resource conservation classifications so as to permit development, but has not permitted similar rezoning or development of The Property."

Nowhere in the complaint does appellant allege with any specificity that the Council treated it differently than others similarly situated. Although appellant asserts that the Council granted other landowner's request to rezone, it has given no facts tending to show "that these other developments were similarly situated to his development." *Silver*, 966 F.2d at 1036–37. Accordingly, appellant fails to allege an equal protection claim.

Even if we assume that the first prong of the rational basis test has been satisfied, appellant has failed to show that any

disparate treatment did not bear a rational relationship to a legitimate interest.

Appellant has not shown, even in its pleading, that the RC–4 zoning lacks a legitimate public purpose or that the means under the RC–4 zoning regulations are unsuitable to that purpose. Appellant merely argues that the Council has rezoned nearby land and that the Council's failure to rezone its property is a violation of its rights to equal protection.[1] That argument is completely without merit.

The very nature of the zoning process requires that parcels of land—even neighboring land—be considered individually. Although neighboring parcels may share some characteristics, each parcel is unique and may not share all of the relevant characteristics possessed by adjacent or nearby parcels. If we were to adopt appellant's argument that its rights to equal protection have been violated simply because neighboring land has been zoned differently from its land, we would be doing away with the zoning process altogether.

During the quadrennial comprehensive zoning process, the County reviews the current zoning structure, evaluates the changes in the community and environment, and makes any necessary amendments it deems appropriate. "Lines ... must be drawn somewhere." *N.W. Merchants Term v. O'Rourke*, 191 Md. 171, 187, 60 A.2d 743 (1947). Without any allegations that the zoning lacks a legitimate purpose, appellant's claim fails.

## Substantive Due Process

Appellant argues that the refusal to rezone its property was arbitrary and capricious and that it was therefore denied its right to substantive due process.

Appellees argue that appellant failed to state a claim for substantive due process because it failed to show a property

---

1. Although appellant mentions in its complaint that one of the neighboring properties that was rezoned includes Hunters Run, it fails to mention that that is the other portion of the 391 acre tract known as Towson Nurseries.

interest that is cognizable under the 14th Amendment's Due Process Clause. We agree.

In *Gardner v. Baltimore Mayor & City Council*, 969 F.2d 63 (4th Cir.1992), the City Planning Commission and City Department of Public Works delayed approval of a public works agreement which would have allowed Gardner to construct a residential subdivision on its property. As a result of the delays, Gardner lost title to the property in a foreclosure sale and thereafter filed a complaint alleging denial of substantive due process. The Court held that

"[t]he first step in analyzing whether the city deprived appellants of substantive due process is a determination of whether they possessed a property interest in the public works agreement that is cognizable under the Fourteenth Amendment's Due Process Clause.... If there is no cognizable property interest, there is no need to reach the question of whether a purported deprivation was arbitrary or capricious."

*Id.* at 68.

In *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the Supreme Court held that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." In applying the "claim of entitlement" standard to substantive due process claims, the *Gardner* Court held:

"whether a property-holder possesses a legitimate claim of entitlement to a permit or approval turns on whether, under state and municipal law, the local agency lacks *all* discretion to deny issuance of the permit or to withhold its approval. Any significant discretion conferred upon the local agency defeats the claim of a property interest."

*Gardner*, 969 F.2d at 68.

The Court further instructed that "[u]nder this standard, a cognizable property interest exists 'only when the discretion of the issuing agency is so narrowly circumscribed that approval

of a proper application is virtually assured.' " *Id.* (quoting *RRI Realty Corp. v. Incorporated Village of Southampton,* 870 F.2d 911, 918 (2d Cir.1989).

Applying the standard, *Gardner* held that, based on the authority granted to the Commission by the city's *Subdivision Regulations,* the "Commission [had] significant discretion to reject even properly submitted applications." *Gardner,* 969 F.2d at 69. The Court concluded, holding that

"Baltimore's subdivision regulations vest broad discretion with the Planning Commission at virtually every stage of the process. This fact by itself deprives appellants of any legitimate claim of entitlement to the regulatory approvals sought. Because they did not possess any property interest cognizable by the Fourteenth Amendment's Due Process Clause, their § 1983 action was properly dismissed."

*Id.* at 72.

In another recently decided Fourth Circuit case, *Biser v. Town of Bel Air,* 991 F.2d 100 (4th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 182, 126 L.Ed.2d 141 (1993), the appellant claimed that the Town of Bel Air deprived him of substantive due process by refusing to grant him a 'special exception' that would have permitted him to build commercial buildings on property zoned for residential use only. The Court held that

"In order for Biser to state a substantive due process claim, he must first demonstrate that he possesses a 'cognizable property interest, rooted in state law,' . . . . We do not believe that Biser held a property interest in the special exception before it was granted by the Board. A property interest requires more than a 'unilateral expectation' that a permit or license will be issued; instead, there must be a 'legitimate claim of entitlement.' . . . In applying this standard of entitlement, we have held that if a local agency has 'any significant discretion' in determining whether a permit should issue, then a claimant has no legitimate entitlement and, hence no cognizable property interest."

*Id.* at 103–4 (citations omitted). Applying that standard, the Court held that the Board had "significant discretion in decid-

ing whether to grant ... a special exception. In making its decision, the Board [uses its discretion to] determine whether granting the exception 'would adversely affect the public health, safety, security, morals or general welfare.'" *Id.* at 104 (citation omitted).

Appellant does not deny that, in order to allege a violation of substantive due process, it first must allege a property interest that is cognizable under the 14th Amendment. It contends that it has met that burden. Appellant argues that "the discretion of the local agency in this case, i.e., the County Council, is circumscribed by the requirement that it support its decisions with probative evidence, as well as the requirement to consider the County as a whole, and not act in favor of a plebiscite of citizens who are acting in their own benefit." Appellant's attempt to strip the Council of its discretion is unconvincing.

Appellant has no Constitutionally cognizable interest in obtaining DR–16 and BL zoning. At best, it has merely a unilateral expectation or desire to obtain the requested zoning. Whether that zoning is to be granted is strictly within the discretion of the County Council.

In making its determination the Council must decide whether granting the petition would promote the general purpose and intent behind the establishment of the zoning regulations. *Baltimore County Code*, § 26–116. To that end, the Council must determine whether granting the petition would "reduce congestion in the roads, streets, and alleys.... promote adequate light and air.... promote health and the general welfare.... [and] facilitate adequate provision[s] for schools, parks, water, sewerage, transportation, and other public requirements, conveniences, and improvements." *Id.* As the Court held in *Biser*, "It is difficult to image a more flexible standard." *Biser*, 991 F.2d 100, 104. "Moreover, the standard focuses on the amount of discretion accorded the issuing agency by law, not on whether or to what degree that discretion is actually exercised." *Gardner*, 969 F.2d at 68. Thus, appellant's contention that it submitted an "award winning"

proposal that met the conditions of the master plan is irrelevant to the substantive due process analysis.

Even if we assume that appellant has established a property interest that is cognizable under the 14th Amendment's Due Process Clause, the result is unchanged.

> "Zoning is a legislative function, and when reviewing the acts of zoning authorities, the duty of the courts is to decide whether such action was arbitrary, discriminatory or illegal [citations omitted].... When a comprehensive map designed to cover a substantial area is adopted, it is entitled to the same presumption of correctness as an original zoning."

*JMC Constr. v. Montgomery County,* 54 Md.App. 1, 16, 456 A.2d 931 (1983); *see also Ark Readi–Mix Concrete Corp. v. Smith,* 251 Md. 1, 246 A.2d 220 (1968); *County Council v. Offen,* 334 Md. 499, 507, 639 A.2d 1070 (1994). Additionally, in *Stump v. Grand Lodge,* 45 Md.App. 263, 269, 412 A.2d 1305 (1980), we noted:

> "Comprehensive rezoning is a vital legislative function, and in making zoning decisions during the comprehensive rezoning process, a County Council is exercising what has been described as its 'plenary' legislative power. The power is broad and is limited only by the constitutional restriction that the Council's actions 'bears a substantial relationship to the public health, comfort, order, safety, convenience, morals and general welfare....' [citations omitted]"

Clearly, prohibiting dense residential development near the Loch Raven Reservoir is substantially related to the protection of the watershed. Additionally, restricting the growth of the community and the manner in which it develops is causally connected to the health, safety, crime prevention, congestion avoidance and general welfare of the community. Accordingly, we affirm the trial court's decision in its entirety.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.