957 A.2d 611

**Carl F. OLTMAN, Sr.**

v.

**MARYLAND STATE BOARD OF PHYSICIANS.**

**No. 00025, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

Oct. 1, 2008.

66

William M. Ferris (Krause & Ferris, on briefs), Annapolis, for Appellant.

Noreen M. Rubin (Thomas W. Keech, Douglas F. Gansler, Atty. Gen., on brief), for Appellee.

Panel: SALMON, RAYMOND G. THIEME, JR., (Retired, Specially Assigned) and SALLY D. ADKINS,* JJ.

ADKINS, J.

In 2003, the Maryland State Board of Physicians (the "Board"), appellee, revoked the physician assistant ("PA") certificate of Carl F. Oltman, Sr., appellant, for committing a crime of moral turpitude. Oltman was convicted of federal misdemeanor charges stemming from his forgery of Ritalin prescriptions and his fraudulent filling of those prescriptions for an adult son who was no longer a covered dependent under Oltman's military medical plan. In *Oltman v. Md. State Bd. of Physicians,* 162 Md.App. 457, 487–88, 875 A.2d 200, *cert. denied,* 389 Md. 125, 883 A.2d 915 (2005)(*Oltman I* ), this Court held that Oltman's convictions qualified as crimes of moral turpitude within the meaning of Md.Code (1981, 2005 Repl.Vol., 2007 Cum.Supp.), sections 14–404(b) and 15–314 of the Health Occupations Article (HO), because fraud was an essential element of both crimes and Oltman signed a plea agreement explicitly acknowledging that he obtained the pre-scriptions "by fraud."

This appeal arises from Oltman's petition for reinstatement two years after revocation. The Board denied reinstatement and ordered that Oltman may not re-apply for three years. Oltman petitioned for judicial review of that decision, com-

---

* Adkins, Sally D., J., now serving on the Court of Appeals, participated in the hearing and conference of this case while an active member of this Court; she participated in the adoption of this opinion as a specially assigned member of this Court.

plaining that his request was not considered by the full Board or an administrative law judge, and that it is premised upon a finding that Oltman lied to the Pennsylvania Board of Medicine, but he was never allowed a contested hearing on that allegation.[1]

The Circuit Court for Anne Arundel County granted the Board's motion to dismiss Oltman's petition for judicial review, on the ground that the court does not have jurisdiction to review a reinstatement decision by the Board. Oltman noted this timely appeal, raising the following issues:

I. Does a circuit court have statutory jurisdiction to entertain a petition for judicial review of a Board decision to deny reinstatement of a PA certificate?

II. Did the Board have standing to file a motion to dismiss Oltman's petition for judicial review, [even though] the Board failed to file a response to the petition in accordance with Md. Rule 7–204?

Answering "no" to the first question and "yes" to the second, we will affirm the judgment.

## FACTS AND LEGAL PROCEEDINGS

Oltman, a retired naval officer, was employed as a PA under contract with the United States Navy. In that capacity, he used a Navy physician's computer to forge prescriptions for his son's medication, even though he knew that his son's age made him ineligible for Navy physicians' services. Oltman then filled the forged prescriptions for free at a Navy pharmacy, even though he knew that his son also was not eligible for such prescription benefits. In addition, Oltman obtained prescriptions from Navy physicians on several occasions from 1997 through 1998, without a physical examination and without notifying the doctors of his son's ineligibility.

The Navy pursued misdemeanor criminal charges against Oltman. He pleaded guilty and was convicted in federal court

---

1. Given our decision regarding jurisdiction and standing, we do not review the merits of these findings.

of obtaining the prescriptions fraudulently. The Navy terminated Oltman, revoked his military PA privileges, and reported the crimes to the Board. After a contested case hearing, the Board revoked Oltman's PA certificate in 2003. This Court affirmed that decision in *Oltman I*, 162 Md.App. at 488, 875 A.2d 200.

In May 2005, Oltman petitioned the Board for reinstatement. Pursuant to its standard procedures for reinstatement petitions, the Board obtained Oltman's written answers to its written questions, and a reinstatement panel of the Board subsequently met with Oltman and counsel. The panel considered the request in light of Oltman's criminal and disciplinary history. In particular, the panel reviewed time sheets from the Prison Health Services showing that Oltman had continued his PA practice for 42 days after the August 11, 2003 revocation, despite the Board's instruction to immediately cease practice and return his PA certificate. Furthermore, the reinstatement panel also considered the Pennsylvania Board of Medicine's 2005 denial of Oltman's application to practice as a PA in that State. The Pennsylvania decision reflected that, in the administrative hearing on his Pennsylvania application, Oltman contradicted his prior admissions in the Maryland revocation hearing, by claiming that he "was not aware that his son was no longer eligible for dependent benefits" at the time he obtained the prescriptions.

The reinstatement panel determined that Oltman did not establish grounds for reinstatement, because his conduct after the 2003 revocation demonstrated continuing lack of honesty, integrity, and remorse, as well as a failure to understand "the Board's serious view of his crimes" or to accept "responsibility for his actions." In a Final Order, the Board denied reinstatement and stated that it would not entertain another reinstatement application from Oltman for three years.

Oltman petitioned for judicial review of the Board's decision in the Circuit Court for Anne Arundel County, citing as jurisdictional grounds "Maryland Rule 7–202." The Board moved to dismiss Oltman's petition, arguing that Rule 7–202

does not confer jurisdiction to review an administrative agency's decision, and that none of the regulatory statutes governing PAs authorizes judicial review of a decision denying reinstatement. After a hearing, the court agreed with the Board and dismissed Oltman's petition. Oltman noted this timely appeal.

## DISCUSSION

### I.

**No Statutory Jurisdiction Authorizing Judicial Review Of Reinstatement Decision**

Title 15 of the Health Occupations Article governs physician assistants. Section 15–314 authorizes revocation of a PA certificate, providing in pertinent part:

**Subject to the hearing provisions of § 15–315 of this subtitle, the Board,** on the affirmative vote of a majority of its members then serving, **may . . . revoke a certificate if the certificate holder:**

(1) Fraudulently or deceptively obtains or attempts to obtain a certificate for the applicant or certificate holder or for another individual;

(2) Fraudulently or deceptively uses a certificate;

(3) Violates any provision of this title or any regulations adopted under this title or **commits any act which could serve as the basis for disciplinary action against a physician under § 14–404 of this article;**

(4) Performs delegated medical acts beyond the scope of the certificate not within a delegation agreement approved by the Board;

(5) Performs delegated medical acts without the supervision of a physician. . . . (Emphasis added.)

We turn then to HO section 14–404, the provision in the Medical Practice Act (MPA) authorizing disciplinary action against physicians for enumerated reasons. As incorporated into HO section 15–314, subsection 14–404(b)(1) permits revo-

cation on the basis of "certified docket entries" showing a conviction (whether after trial or a plea of guilty or *nolo contendere*) for "a crime involving moral turpitude[.]" As detailed in *Oltman I*, Oltman's federal convictions qualified as crimes of moral turpitude, meriting revocation of his PA certificate. *See Oltman I*, 162 Md.App. at 488, 875 A.2d 200.

HO section 15–315 establishes procedural rights in PA disciplinary proceedings, including those resulting in revocation due to convictions for crimes of moral turpitude.[2] It provides for both a hearing and an appeal on the following terms:

(a)(1) *Opportunity for hearing.*—Except as otherwise provided under § 10–226 of the State Government Article, before the Board takes any action under § 15–314 of this subtitle, the Board shall give the individual against whom the action is contemplated an opportunity for a hearing before a hearing officer.

(2) The hearing officer shall give notice and hold the hearing in accordance with Title 10, Subtitle 2 of the State Government Article.

(3) The Board may administer oaths in connection with any proceeding under this section.

(4) At least 14 days before the hearing, the hearing notice required under this subtitle shall be sent by certified mail to the last known address of the individual.

(b)(1) **Appeals.—Any certificate holder who is aggrieved by a final decision of the Board under this subtitle may not appeal to the Board of Review but may take a direct judicial appeal.**

(2) The appeal shall be as provided for judicial review of the final decision in Title 10, Subtitle 2 of the State Government Article. . . . (Emphasis added.)

---

**2.** In contrast, HO section 15–313 governs Board proceedings that result in denial of a certificate, rejection of a delegation agreement, or modification of such an agreement.

In the 2003 revocation proceedings, Oltman was afforded the appropriate contested case hearing and judicial review. The question raised by Oltman in this appeal is whether he is likewise entitled to such a hearing and judicial review in connection with his 2005 petition for reinstatement.

The circuit court agreed with the Board that it "does not have the jurisdiction to entertain a petition for judicial review from the denial of a ... petition for reinstatement" of a PA certificate. The court reasoned:

It is a completely different process when there is a revocation. In other words, when somebody has a certificate and there is a[n] action for revocation that encompasses a proprietary interest that the certificate holder has and deprivation of that certificate cannot be done without some measure of due process and that's why the statutes allow for a judicial review from that.

But, once somebody has, as a result of contested hearings, appeals and other activity, lost the certificate it has been revoked. He no longer has a proprietary interest. He has nothing at this point other than what the Board grants him as a measure of grace.

I think the fact that there are no standards set out in the statute also suggests that it's purely a discretionary ... decision with the Board. There is nothing that a [c]ourt would have before it to determine whether or not the Board exercised discretion appropriately or not.

There are no statutory standards. There's no guidelines that say ... so long as somebody meets certain standards they can come back and practice. So I think that is also indicative of the fact that it is purely a matter of grace on the part of the Board and it is not subject to judicial review.... [U]nless there is some statutory authority for judicial review[,] administrative agencies have a certain number of activities that they can engage in that are not subject to judicial review.... I don't find that either Title 14 or Title 15 of the Health Occupations Article or any other law that I've been able to locate has created any such right

to file for judicial review from a denial of a petition for reinstatement after a revocation.

Oltman argues that the court erred in concluding that it lacked statutory jurisdiction to review denial of his petition for reinstatement. We agree with the reasoning of the circuit court and are not persuaded otherwise by Oltman's arguments that he is entitled to judicial review of the Board's reinstatement decision.

As a threshold matter, we observe that Md. Rule 7–202 does not authorize judicial review of administrative decisions. Title 7, Chapter 200 of the Maryland Rules of Procedure explicitly applies to "judicial review of . . . an order or action of an administrative agency, **where judicial review is authorized by statute[.]**" Md. Rule 7–201(a)(emphasis added). This is consistent with the well-established principle that, "in order for an administrative agency's action properly to be before . . . any court[ ] for judicial review, there generally must be a legislative grant of the right to seek judicial review." *Harvey v. Marshall,* 389 Md. 243, 273, 884 A.2d 1171 (2005). Thus, there is typically no right to judicial review of an administrative decision unless that right is established **by** statute. *See, e.g., Urbana Civic Ass'n, Inc. v. Urbana Mobile Village, Inc.,* 260 Md. 458, 462–63, 272 A.2d 628 (1971)(court had "no jurisdiction to entertain an appeal" from county commissioners's decision because "a provision for such judicial review [was] conspicuously absent" from enabling statutes).

We agree with the circuit court that none of the statutes applicable to Oltman's reinstatement petition establishes a right to judicial review. The PA Act itself does not authorize such review. Although HO section 15–315(b)(1) permits "[a]ny certificate holder who is aggrieved by a final decision of the Board under this subtitle" to "take a direct judicial appeal[,]" Oltman was no longer a "certificate holder" at the time the Board denied his petition for reinstatement. When the words of the statute are clear and unambiguous, we need not "engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning." *Taylor v.*

*NationsBank*, 365 Md. 166, 181, 776 A.2d 645 (2001). Section 15–101 cross-defines "certificate" as "a certificate issued by the Board to a physician assistant under this title" and "physician assistant" as "an individual who is certified under this title[.]" HO § 15–101(d), -(m). As a result of the 2003 revocation proceedings, Oltman lost not only his "certificate," but also his status as a "certificate holder" and "physician assistant," and thus lost the right to judicial review afforded under section 15–315(b) to those who hold such a property interest.

We are not persuaded otherwise by Oltman's argument that language in HO section 15–308 supports his interpretation of "certificate holder" as encompassing an individual whose PA certificate has been revoked for crimes of moral turpitude. Nothing in section 15–308 guarantees the contested case hearing and judicial review sought by Oltman. This section pertains only to proceedings to reinstate a PA certificate that **expired on its own terms** because the PA "failed to renew it for any reason[.]" [3] (Emphasis added.) Nothing in the language or history of this provision suggests that it applies to a person whose PA certificate has been revoked for misconduct.

In our view, section 15–308 actually supports the contrary proposition that the appeal rights granted to "certificate holders" under section 15–315(b) do not extend to former PAs whose certificates have been revoked for misconduct. By identifying an individual who is entitled to invoke the reinstatement provisions of section 15–308 as "a physician assistant who has failed to renew the certificate," the legislature demonstrated that it knows how to distinguish a PA certificate

---

3. HO section 15–308, governing reinstatement of an expired PA certificate, provides:

> The Board, in accordance with its regulations, shall reinstate the certificate of a physician assistant who has failed to renew the certificate for any reason if the physician assistant:
> (1) Meets the renewal requirements of § 15–307 of this subtitle;
> (2) Pays to the Board the reinstatement fee set by the Board; and
> (3) Submits to the Board satisfactory evidence of compliance with the qualifications and requirements established under this subtitle for certificate reinstatements.

holder from a former certificate holder. Thus, we may not ignore the General Assembly's selection of the unqualified term "certificate holder" to identify persons entitled to the hearing and appeal rights afforded under section 15–315. For that reason, the circuit court correctly concluded that the right of judicial review afforded to "certificate holder[s]" under section 15–315(b) does not extend to former certificate holders such as Oltman.

We also agree that judicial review of a reinstatement decision is not authorized by any of the MPA provisions that have been expressly incorporated by reference into the PA Act. *See* HO § 14–409, § 15–314, § 15–315. HO section 15–315(d) provides that "[a]ll of the findings and orders of the Board that relate to physician assistants are subject to the provisions of Title 14, Subtitle 4 of this article." Thus, a petition for reinstatement of a PA certificate is subject to the reinstatement provisions for physicians set forth in HO section 14–409. In turn, section 14–409 permits the Board to "reinstate the license of an individual whose license has been suspended or revoked," but does not explicitly provide for judicial review of a reinstatement decision. *See* HO § 14–409(a).

Neither is such authorization for judicial review contained in HO section 14–408, which governs administrative and judicial review of decisions concerning physician licenses. Instead, section 14–408(a) states that those "aggrieved by a final decision . . . in a contested case, as defined in the Administrative Procedure Act may . . . [a]ppeal that decision to the [Physician] Board of Review" and "[t]hen take any further appeal allowed by the Administrative Procedure Act" (APA), *codified at* Md.Code (1984, 2004 Repl.Vol., 2007 Cum.Supp.), § 10–101 *et seq.* of the State Government Article (SG). Thus, we must look to the APA to determine whether a request to reinstate a PA certificate or a physician's certificate qualifies as a "contested case."

Section 10–222 of the APA contains the same "contested case" requirement found in the MPA and incorporated by reference into the PA Act. It provides in pertinent part that a

person who "is aggrieved by the final decision **in a contested case** is entitled to judicial review of the decision as provided in this section[.]" (Emphasis added.) A "contested case" is statutorily defined to mean:

a proceeding before an agency to determine:

(i) a right, duty, statutory entitlement, or privilege of a person **that is required by statute or constitution to be determined only after an opportunity for an agency hearing;** or

(ii) the grant, denial, renewal, revocation, suspension, or amendment of a license **that is required by statute or constitution to be determined only after an opportunity for an agency hearing.**

SG § 10–202(d)(1) (emphasis added).[4] The APA itself, however, "does not grant the right to a hearing. The right must come from another source such as a statute, a regulation, or due process principles." *Sugarloaf Citizens Ass'n v. Northeast Md. Waste Disposal*, 323 Md. 641, 652, 594 A.2d 1115 (1991).

Accordingly, in order to determine whether Oltman has a right to judicial review of the Board's reinstatement decision as a result of procedural provisions in either the APA or the MPA, as incorporated by the PA Act, we must first determine whether there is any statute that required the Board to conduct a hearing before it ruled on Oltman's petition. To answer this question, we must return to the PA Act itself.

HO section 15–315(a)(1) provides that "before the Board takes any action under § 15–314 ... the Board shall give the individual against whom the action is contemplated an opportunity for a hearing before a hearing officer." Section 15–314,

---

**4.** We note that the term "contested case" is further defined to exclude "a proceeding before an agency involving an agency hearing required only by regulation unless the regulation expressly, or by clear implication, requires the hearing to be held in accordance with this subtitle." SG § 10–202(d)(2). Oltman does not contend that there is such a regulation requiring a hearing on his petition for reinstatement.

however, governs only proceedings to "reprimand [a] **certificate holder** or suspend or revoke **a certificate** if the **certificate holder**" has committed one of the enumerated acts, including "fraudulently or deceptively us[ing] a certificate[.]" (Emphasis added.) Notably, section 15–314 does not mention reinstatement proceedings. Moreover, as discussed above, there are clear definitions of "certificate" and "certificate holder" that exclude a former PA whose certificate has been revoked for misconduct. Under the unambiguous terms of sections 15–314 and 15–315, therefore, Oltman was not entitled to a hearing on his petition for reinstatement, and therefore the reinstatement proceeding is not a "contested case" for which judicial review is available. *Cf. Holmes v. Robinson,* 84 Md.App. 144, 150–51, 578 A.2d 294 (1990)(proceeding in which inmate was denied reinstatement to a work release program was not a "contested case"), *cert. denied,* 321 Md. 501, 583 A.2d 275 (1991).

■ Having no statutory right to a hearing, Oltman is entitled to a judicial review only if a hearing was constitutionally required in these circumstances. We begin—and in this instance end—the procedural due process analysis by asking whether Oltman "was deprived of a protected property interest." *See City of Annapolis v. Rowe,* 123 Md.App. 267, 276, 717 A.2d 976 (1998). To establish such a deprivation in this professional licensing context, Oltman must show that he has a vested interest in the reinstatement of his certificate, even after it was revoked for misconduct. This he cannot do.

■ To be sure, Oltman had a protected property interest in his PA certificate before it was revoked. *Cf. Stillman v. Comm'n on Med. Discipline,* 291 Md. 390, 405, 435 A.2d 747 (1981)("The right to practice medicine is a property right of which a physician cannot be deprived without due process of law"). But Oltman received the full panoply of hearing and judicial review protections during the revocation proceedings. Once his PA certificate was properly revoked, Oltman no

longer had a property interest to protect.[5]   Instead, the Board had discretion to grant or deny reinstatement of the certificate.   Indeed, such discretionary authority "defeats [any] claim of a property interest." *Security Mgmt. Corp. v. Baltimore Co.*, 104 Md.App. 234, 246, 655 A.2d 1326, *cert. denied*, 339 Md. 643, 664 A.2d 886 (1995), *cert. denied*, 516 U.S. 1115, 116 S.Ct. 917, 133 L.Ed.2d 847 (1996); *see also Bloch v. Powell*, 348 F.3d 1060, 1069 (D.C.Cir.2003)(Supreme Court decisions "make discretion the touchstone of the due process analysis in the property context"); *Biser v. Town of Bel Air*, 991 F.2d 100, 104 (4th Cir.), ("if [an] ... agency has 'any significant discretion' in determining whether a permit should issue, then a claimant has no legitimate claim of entitlement, and, hence, no cognizable property interest" for due process purposes); *cert. denied*, 510 U.S. 864, 114 S.Ct. 182, 126 L.Ed.2d 141 (1993).

Accordingly, Oltman is a **former** certificate holder who is aggrieved by the Board's decision that he cannot become a current certificate holder.   There is no language in the PA Act or the APA requiring a contested case hearing or judicial review for such persons.   We hold that the circuit court correctly concluded that it lacks statutory jurisdiction to review the Board's denial of Oltman's petition for reinstate-

---

5.   Our conclusion is consistent with decisions cited by the Board for the proposition that the former holder of a professional license does not have the requisite property interest to invoke due process protections. *See, e.g., Burkhalter v. Tex. Bd. of Med. Examiners*, 918 S.W.2d 1 (Tex.Ct.App.1996) ("Since appellant's license has been revoked, we cannot say that substantive due process rights attach to non-existent property"); *Limongelli v. N.J. State Bd. of Dentistry*, 137 N.J. 317, 645 A.2d 677, 682 (1993) (former dentist whose license had been revoked for criminal misconduct did not have a "legitimate claim of entitlement" to reinstatement under due process principles); *Flanzer v. Bd. of Dental Examiners of Cal.*, 220 Cal.App.3d 1392, 271 Cal.Rptr. 583, 586 (1990) ("an applicant for reinstatement ... is not in the position of an untried newcomer, but a fallen licentiate"); *Keeley v. Pa. Real Estate Comm'n*, 93 Pa.Cmwlth. 291, 501 A.2d 1155, 1158 (1985) ("once [a] license has been revoked, ... that individual is stripped of whatever property interest he possessed in the license through a procedure consistent with the individual due process guarantees").

ment.[6]

## II.

### Board's Standing To Move For Dismissal

Md. Rule 7–204 applies to judicial review of administrative agency decisions, and provides in pertinent part:

(a) **Who May File; Contents.** Any person, including the agency, who is entitled by law to be a party and who wishes to participate as a party shall file a response to the petition. *The response shall state the intent to participate in the action for judicial review. No other allegations are necessary.*

(b) **Preliminary Motion.** *A person may file with the response a preliminary motion addressed to standing, venue, timeliness of filing, or any other matter that would defeat a petitioner's right to judicial review.* Except for venue, failure to file a preliminary motion does not constitute waiver of an issue. A preliminary motion shall be served upon the petitioner and the agency. (Italics added.)

Oltman contends that the Board lacked standing to file its motion to dismiss for lack of jurisdiction, because it was required to file a response to his petition for judicial review either before or at the same time it moved to dismiss that petition. We disagree.

Md. Rule 7–202 clearly contemplates what happened here, *i.e.,* that the Board may challenge a petitioner's right to obtain judicial review of its decision via a "preliminary motion." Nothing in the language or history of the rule suggests that the right to file such a preliminary motion is contingent on the Board simultaneously filing a separate response to the merits of the petition for judicial review. Moreover, reading

6. Oltman does not argue that the court had inherent jurisdiction. *Cf. Harvey v. Marshall,* 389 Md. 243, 277, 884 A.2d 1171 (2005)(court's "inherent power of judicial review of administrative decisions ... is extremely limited"). Nor did he seek the equivalent of "administrative mandamus" relief. *Cf.* Md. Rules 7–401 *et seq.*

the rule to create such a contingency defies common sense. Here, the Board's filing of a motion to dismiss adequately demonstrated that the Board "intends to participate in the action" in order to contest the right to judicial review. "No other allegations are necessary." Md. Rule 7–202(a). Once the Board prevailed on its motion, there was no longer any action for judicial review and therefore, no reason for the Board to file another response for the illogical purpose of indicating an intent to participate in a dismissed case.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**