694 A.2d 492

MARYLAND PHARMACISTS ASSOCIATION, INC.

v.

OFFICE OF THE ATTORNEY GENERAL.

No. 1444, Sept.Term, 1996.

Court of Special Appeals of Maryland.

May 30, 1997.

Joseph S. Kaufman (Schulman & Kaufman, L.L.C., on the brief), Baltimore, for Appellant.

Ellen S. Cooper, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General and Katharine M. Ebersberger, Assistant Attorney General, on the brief), Baltimore, for Appellee.

Argued before MOYLAN and HARRELL, JJ., and PAUL E. ALPERT, Judge (retired), Specially Assigned.

HARRELL, Judge.

The Maryland Pharmacists' Association (the "local Association") appeals the dismissal of its Petition for Judicial Review (the "Petition") by the Circuit Court for Baltimore City. The local Association filed the Petition after the Attorney General denied its "Claim Pursuant to [Md. State Gov't Code Ann. (S.G.) § 10–224] for Reimbursement of Expenses, Etc." (the "Claim") seeking reimbursement of expenses it incurred responding to a Civil Investigative Demand (the "CID") issued pursuant to Md. Comm. Law II Code Ann. (C.L.) § 11–205. It also sought reimbursement for monitoring expenses incurred during the underlying state antitrust investigation of an alleged violation of C.L. § 11–204 [1]. We shall affirm the judge's order dismissing the Petition and all then pending motions.

## FACTS

Allegedly at the behest of the Hallmark Card Co., Inc. ("Hallmark"), the Attorney General's Antitrust Division ("the Division") began an investigation of a 27–31 October 1991

---

1. This subtitle details the conduct, contracts, combinations, and conspiracies proscribed by the Maryland Antitrust Act (C.L. § 11–201 *et. seq.*).

Baltimore, Maryland convention of the National Association of Retail Druggists (the "national Association"). The Division apparently attempted to ascertain if certain pharmacists, or trade organizations of pharmacists, cared enough to boycott the very best. During that convention, an exhibit, entitled the "Hallmark Hall of Shame", was established. The purpose of that presentation was to reveal that Hallmark endorsed mail-order prescription plans over retail pharmacies for its employees' usage in their medical benefits plan. Incongruously, those same pharmacies, the "Hall of Shame" insisted, served as the centerpiece of Hallmark's system of greeting card distribution. The local Association disclaimed substantive connection to the convention or the "Hall of Shame". The local Association maintained that any involvement on its part, limited to certain social events, was due solely to the convention's Baltimore location.

On 3 August 1993, the Division sent a letter to the local Association requesting certain documents concerning, *inter alia,* the "Hall of Shame". That communique requested compliance with the CID. It seems that the Attorney General for Maryland, and his counterparts in Ohio and Texas, initiated antitrust enforcement investigations. The Maryland investigation was initiated, and a CID was issued pursuant to C.L. § 11–205. That statute states, in pertinent part, that

if the Attorney General believes that a person may be in possession, custody, or control of any original or copy of any ... tangible document or recording, wherever situated, which he [or she] believes is relevant to the subject matter of an investigation of a possible violation [of the Maryland Antitrust Act, C.L. § 11–201 *et. seq.*], he may serve on the person before the institution of a civil proceeding for the violation a written civil investigative demand [or CID] which requires him to produce the documentary material and permit inspection and copying.

In compliance with the CID, the local Association delivered to the Division a notebook of documents and a written denial of involvement in the "Hall of Shame" exhibition. A few weeks later, on 4 November 1993, an "uncivil" protracted

stationery battle began. The local Association fired twelve volleys at the Division seeking information and closure of the investigation. The Division returned fire, with seven missiles of its own, refusing to share information regarding the progress or status of the investigation. Finally, the stonewall barriers of the Division tumbled when, on 2 February 1996, the Division returned the notebook of documents to counsel for the local Association.[2] Recognizing the significance of that action, the local Association confirmed that the investigation was "closed".

That "closure" resulted in the inception of the current case. The local Association sought reimbursement for the expenses it incurred during its compliance with, and monitoring of, the CID. That request was made pursuant to S.G. § 10–224. The relevant portions of that statute are set forth below.

**§ 10–224.  Litigation expenses for small businesses and non-profit organizations.**

*      *      *      *      *      *

(c) Reimbursement authorized.—Subject to the limitations in this section, an agency or court may award to a business or nonprofit organization reimbursement for expenses that the business or nonprofit organization reasonably incurs in connection with a contested case or civil action. . . .

(d) Claim required in contested case.—

(1) To qualify for an award under this section when the agency has initiated a contested case, the business or nonprofit organization must make a claim to the agency before taking any appeal.

(2) The agency shall act on the claim.

Appellant filed a claim with the Attorney General for certain expenses it incurred in responding to the CID request and

---

2. The Attorney General never explicitly notified the local Association that the investigation was closed. Although we do not decide that the Attorney General was compelled to reveal the status of the investigation, we do not applaud, and surmise as unpalatable, his decision to remain mute upon cessation.

attempting to monitor the investigation. The Attorney General denied that claim by stating, *inter alia,* that the CID did not initiate a "contested case or civil action" within the meaning of S.G. § 10–224. The local Association filed the Petition in the Circuit Court for Baltimore City that was ultimately dismissed along with all pending motions. It is that dismissal that the local Association now appeals.

## QUESTIONS

We shall focus our analysis on four questions raised, at least inferentially, by appellant. We have restructured those issues below to facilitate better our analysis.

I. Under what types of proceedings may a party seek reimbursement under S.G. § 10–224?

II. Is the local Association entitled to seek reimbursement under S.G. § 10–224 for expenses it incurred in a "contested case"?

III. Is the local Association entitled to seek reimbursement under S.G. § 10–224 for expenses it incurred in a "civil action"?

IV. Did the trial court err by dismissing a motion to compel compliance with Md. Rule 7–206 coincident with its dismissal of the Petition?

## ANALYSIS

### I.

■ In order to invoke the provisions of S.G. § 10–224, there must be a "contested case or civil action". This prerequisite to reimbursement is clear from the plain language contained in the statute. "An agency or court may award to a business or nonprofit organization reimbursement for expenses that the business or nonprofit organization reasonably incurs in connection with a contested case or civil action. . . ." S.G. § 10–224(c). Simply put, either a "contested case or civil action" must be linked to the expenses in order for a party to sustain a claim for reimbursement.

If the words of a statute are clear and unambiguous, our search for its meaning may begin and end with their plain meaning. *See e.g., Board of Trustees of Md. State Retirement and Pension Sys. v. Hughes,* 340 Md. 1, 7, 664 A.2d 1250 (1995); *see also Long v. State,* 343 Md. 662, 667, 684 A.2d 445 (1996) (citing *In re Victor B.,* 336 Md. 85, 94, 646 A.2d 1012 (1994)); *Harris v. State,* 331 Md. 137, 145, 626 A.2d 946 (1993); *Mustafa v. State,* 323 Md. 65, 73, 591 A.2d 481 (1991). Where language is plain and unambiguous, and expresses a definite meaning consonant with the statute's purpose[3], courts must not insert or delete words to make it express an intention different from its clear meaning. *See e.g., In re Adoption / Guardianship No. A91–71A,* 334 Md. 538, 557–59, 640 A.2d 1085 (1994); *Department of State Planning v. Mayor of Hagerstown,* 288 Md. 9, 15, 415 A.2d 296 (1980). We conclude that the language of the statute is plain and unambiguous regarding the "contested case or civil action" prerequisite. There simply is no provision, contained in S.G. § 10–224, for recovery of expenses, unless those expenditures stem from a "contested case or civil action".

## II.

■ "Contested case", as that term is used in S.G. § 10–224, is defined, in pertinent part, as:

(1) . . . a proceeding before an agency to determine:

(i) a right, duty, statutory entitlement, or privilege of a person that is required by statute or constitution to be determined only after an opportunity for an agency hearing.

S.G. § 10–202(d). In *Modular Closet Sys., Inc. v. Comptroller of the Treasury,* 315 Md. 438, 554 A.2d 1221 (1989), the definition of "contested case" was further refined to include only those disputes that, by their nature, entitle a party to an agency hearing, regardless of whether a hearing was in fact held. *Id.* at 444, 554 A.2d 1221. The entitlement to an agency

---

3. The stated purpose of the statute is "to ensure the right of all persons to be treated in a fair and unbiased manner in their efforts to resolve disputes in administrative proceedings governed by this subtitle; and promote prompt, effective, and efficient government." S.G. § 10–201.

hearing does not arise from the Administrative Procedure Act (S.G. § 10–101, *et seq.*), but must originate from another source such as a statute, regulation, or due process principles. *Sugarloaf Citizens Ass'n v. Northeast Md. Waste Disposal Auth.*, 323 Md. 641, 652, 594 A.2d 1115 (1991); *North v. Kent Island Ltd. Partnership*, 106 Md.App. 92, 103, 664 A.2d 34 (1995). Thus, in order to decide that a "contested case" existed, we must discern from some other source that the local Association would have ultimately been entitled to an agency hearing on the facts of this case.

In its attempt to demonstrate an entitlement to an agency hearing, appellant proffers an overly expansive interpretation of *Modular Closet.* Appellant, in its brief, posits that,

> just as in *Modular [Closet]* where the [agency] abandoned the pursuit of its sales tax assessment, here, [the Attorney General] abandoned the proceedings.... The law permitted a hearing to the local [Association] at several stages. First, if instead of cooperating with the [Attorney General's CID, the local Association] played "hardball" and failed to comply ..., it would have required the [Attorney General] to apply to [c]ourt for enforcement where the court would hear and determine the matter. Secondly, if there was evidence of a[n antitrust] violation, a civil action would be required ... which would necessitate a hearing. If the [Attorney General] had not abandoned the proceeding a civil action would have been filed and a hearing granted to the [local] Association.

(internal citations omitted). Essentially, the local Association asserts that, had it balked at complying with the CID or if the Attorney General had pursued the fruits of its investigation through a civil action, the local Association would have been entitled to a "hearing" before a court.[4] Appellant has apparently confused a "hearing" before a court with a "hearing" before an agency.

---

**4.** In *Modular Closet,* the Court of Appeals indicated that a proceeding that would ordinarily qualify as a "contested case", does not become a "contested case" when the proceeding remains in a preliminary investigative stage. *Modular Closet Sys., Inc. v. Comptroller of the Treasury,*

■ We conclude that a "contested case" is a proceeding before, or dispute with, an agency that entitles a party to an *agency* hearing. The definition of "contested case" contemplates only an agency hearing. In every instance, S.G. § 10–202(d) limits the scope of contested cases to those proceedings entitling a party to an agency hearing and not a hearing before a court. We agree with appellant that, had the Attorney General taken further action against the local Association for a violation of state antitrust law, it may have ultimately been subjected to a hearing before a constitutional court. Such a hearing may have stemmed from either a petition for enforcement of the CID pursuant to C.L. § 11–205(h) or a civil action pursuant to C.L. § 11–209. Such an ultimate result, however, does not amount to an entitlement to an agency hearing. Without such, the dispute cannot be labeled, under any circumstances, a "contested case". We cannot unearth, nor has appellant identified, an entitlement to an agency hearing springing from the issuance of the CID. In fact, no provision of the Maryland Antitrust Act contemplates an agency hearing. The Attorney General has only two enforcement options. He may either institute criminal proceedings under C.L. § 11–207 or a civil action under C.L. § 11–209. Simply put, the antitrust investigation of the local Association was not a "contested case" because such is initiated only when a person becomes entitled to an agency hearing.

## III.

■ Unlike our prior determination concerning "contested cases", we perceive that no entitlement to a hearing is neces-

---

315 Md. 438, 447, 554 A.2d 1221 (1989). The agency, in that case, went beyond mere investigation and levied an assessment against appellant. That action shifted the matter beyond the preliminary stages. At that point, Modular became entitled to an eventual hearing. In the instant case, appellant argues that the Attorney General's investigation went beyond the preliminary stages. As we shall discuss *infra,* the extent of the investigation remains irrelevant to our analysis because under no circumstances would the local Association be entitled to an agency hearing.

sary for the existence of a "civil action". According to Md. Rule 2–101(a), a "civil action is commenced by filing a complaint with a court." "As a fundamental principle[,] a civil action is an adversary proceeding before a court of law; judicial review of the decision of an administrative agency is [also] a civil action. . . ." *Unnamed Physician v. Commission on Medical Discipline*, 285 Md. 1, 9–10, 400 A.2d 396 (1979). We conclude that ordinarily the only method of initiating a "civil action" is the filing of a complaint or petition of review with a court.[5] No such document was ever issued by the Attorney General in the instant case. In order to implement his civil enforcement of the Maryland Antitrust Act, the Attorney General must file a complaint "in equity to prevent or restrain violations of [C.L.] § 11–204. . . ." C.L. § 10–209(a). He is required to do so only when an investigation reveals evidence that the Maryland Antitrust Act has been violated. In the instant case, no "civil action" commenced because a complaint was never filed and, therefore, expenses are not recoverable under S.G. § 10–224. The trial court did not err by dismissing the local Association's petition for judicial review because no "contested case" or "civil action" existed.

## IV.

■ Finally, the local Association attempts to assign error to the trial judge's dismissal of its Motion to Compel Compliance with Md. Rule 7–206 [6]. The trial judge, in his order dismissing the Petition, similarly disposed of all pending motions. Appellant, by its motion, had sought to compel the

---

5. Under limited circumstances not relevant to the instant action, "civil actions" may be initiated by other means. For example, certain "special proceedings" (formerly codified under Chapter 1100 of the Maryland Rules and now dispersed throughout) are "civil actions" that are launched by filing a mere petition. *See, e.g.,* Md. Rule U6 (1996) (codified as amended at Md. Rule 12–205 (1997)).

6. Md. Rule 7–206 sets forth the requirements for producing the agency record when a circuit court acts in its appellate capacity reviewing the agency's action.

Attorney General to make available the "record" of its proceedings regarding the investigation. The Attorney General had refused to produce evidence gathered during its investigation citing the nondisclosure provisions of C.L. § 11–205(f). The Attorney General argues on appeal that the Motion to Compel production of the record became moot when the underlying case was dismissed. The local Association claims that the case could not have been properly dismissed without allowing the court and appellant to have access to the contents of the record. Similarly, the local Association argues that this Court cannot fully determine the extent of the Attorney General's investigation without access to the record. Essentially, appellant contends that the record may reveal that the nature of the dispute satisfies the definition of a "contested case". We agree with the Attorney General that the motion became moot upon dismissal of the Petition. We explain.

As stated above, the local Association never had the right to seek reimbursement. Nothing in the record could have resulted in a determination that the local Association was entitled to an agency hearing. Therefore, the record could not remedy the failure of the instant matter to warrant classification as a "contested case". We conclude that the contents of the record, and the extent of its development, were irrelevant to the trial court's determination regarding the viability of the Petition. Similarly, the record could not alter our determination that redress under S.G. § 10–224 was never available to the local Association. The motion to compel production of the record, therefore, became moot upon the dismissal of the Petition.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**