883 A.2d 1025

**Levi DOZIER, III**

v.

**DEPARTMENT OF HUMAN RESOURCES.**

No. 1793, Sept. Term, 2004.

Court of Special Appeals of Maryland.

Sept. 29, 2005.

Darcy Rood Massof, Baltimore, for appellant.

David E. Beller (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for appellee.

Panel: SALMON, KENNEY, BARBERA, JJ.

KENNEY, J.

Levi Dozier, III, appeals the dismissal of his petition for judicial review by the Circuit Court for Baltimore City. He raises two questions, which we have consolidated as follows: [1]

Whether the circuit court erred in dismissing Dozier's petition for judicial review?

Finding no error, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Dozier was employed by the Baltimore City Department of Social Services ("BCDSS") from August 6, 1986, until March 5, 2004.[2] During his eighteen years of service, Dozier was never the subject of any disciplinary action. He rose from a "front line social worker" to a Program Administrator II.[3] As a Program Administrator II, Dozier was an "employee at will," serving "at the pleasure of the employee's appointing authori-

---

1. Dozier poses the following:

   1. Whether the trial court erred by dismissing appellant's petition when he had a statutory right to judicial review.
   2. Whether the appellant was denied due process when the court dismissed his petition for judicial review.

2. BCDSS is an agency within the Department of Human Resources ("DHR").

3. The parties dispute whether this position is classified as "management service" or as a "special appointment." Dozier contends that he was a "special appointment," but does not provide authority to support his proposition. A special appointment is defined as:

   Except as otherwise provided by law, individuals in the following positions in the skilled service, professional service, management service, or executive service are considered special appointments:
      (1) a position to which an individual is directly appointed by the Governor by an appointment that is not provided for by the Maryland Constitution;
      (2) a position to which an individual is directly appointed by the Board of Public Works;
      (3) as determined by the Secretary, a position which performs a significant policy role or provides direct support to a member of the executive service;
      (4) a position that is assigned to the Government House;
      (5) a position that is assigned to the Governor's Office; and

ty," and subject to termination "for any reason, solely in the discretion of the appointing authority." Maryland Code (1993, 2004 Repl.Vol.), § 11–305 of the State Personnel and Pensions Article ("SPP").

On February 20, 2004, Dozier was presented with a notice of termination from the Department of Human Resources Secretary, Christopher J. McCabe. The letter, dated February 19, 2004, with an effective termination date of March 5, 2004, provided no justification for the termination and explained Dozier's right to appeal as follows:

> In accordance with § 11–113 of the State Personnel and Pensions Article, you may appeal the termination by filing a written appeal within 15 days of your receipt of this memorandum. Your appeal should be sent to the Employer–Employee Relations Unit, Department of Human Resources, 311 West Saratoga Street, Baltimore, Maryland 21201, and may only be based on the grounds that the action was illegal or unconstitutional. The decision on your appeal is the final decision in this matter.

Dozier filed a written appeal on March 1, 2004. Three days later, his counsel filed an addendum to the appeal providing

---

(6) any other position that is specified by law to be a special appointment.

Maryland Code (1993, 2004 Repl.Vol.) § 6–405 of the State Personnel and Pensions Article ("SPP").

Management service is defined as:

(a) *Executive Branch.*—Except as otherwise provided by law, a position in the Executive Branch of State government is in the management service if the position:

(1) primarily involves direct responsibility for the oversight and management of personnel and financial resources;

(2) requires the exercise of discretion and independent judgment; and

(3) is not in the executive service.

(b) *Other positions.*—The management services includes any other position that is determined by the Secretary to be in the management service.

SPP § 6–403. This dispute need not be resolved in this case because the applicable termination statutes, SPP § 11–113 and § 11–305, apply equally to both management service positions and special appointments.

four reasons why his termination was unlawful: (1) it was procedurally defective because it was not signed by his immediate appointing authority; (2) he would not have accepted a promotion 3 months earlier, which subjected him to reclassification and removed him from the "protections of the merit system," had he known he would be terminated; (3) counsel was conducting an investigation to determine if there was a violation of Dozier's civil rights; and (4) several days after the termination, the BCDSS Interim Director made a certain statement that Dozier interpreted to be defamatory.

On March 24, 2004, the Employer–Employee Relations Unit ("Unit") held a discretionary conference with Dozier pursuant to SPP § 11–113.[4] Thereafter, on April 6, 2004, the Unit issued a written decision concluding that: (1) Dozier had not sustained his burden of proving that the Secretary of Human Resources did not have authority to terminate appointments within BCDSS; (2) Dozier's promotion in November 2003, had "no bearing [ ] on the legality or constitutionality of [his] termination"; and (3) Dozier had failed to prove that any defamatory statements were actually made, and that, in any event, any statements made after the termination did not demonstrate that the termination was illegal or unconstitutional. The decision by the Unit, pursuant to SPP § 11–113(d)(3), was the "final administrative decision." [5]

Dozier filed a petition for judicial review on May 6, 2004, which was dismissed by the circuit court on September 2, 2004. After the court denied Dozier's Motion to Alter Judgment, he filed this appeal.

## DISCUSSION

Dozier contends that the circuit court improperly dismissed his petition for judicial review because it was authorized by

4. SPP § 11–113(c) states: "The head of the principal unit may confer with the employee before making a decision."

5. SPP § 11–113(d)(3) states: "The decision of the head of the principal unit is the final administrative decision."

statute and because he was denied due process. We shall address each contention individually.

## I. Statutory Right to Judicial Review

■ The Maryland Rules provide that judicial review of "an order or action of an administrative agency" is permitted only when "authorized by statute." [6] Md. Rule 7–201. In this case, Dozier, an employee at will, was terminated pursuant to SPP § 11–305, which grants a right of appeal pursuant § 11–113. It provides: [7]

(a) *Applicability of section.*—This section only applies to an employee:

(1) in the management service;

(2) in executive service; or

(3) under a special appointment described in § 6–405 of this article.

---

**6.** The Court of Appeals has held, however, that even when not authorized by statute, " 'Courts have the inherent power, through the writ of mandamus, by injunction, or otherwise, to correct abuses of discretion and arbitrary, illegal, capricious, or unreasonable acts; but in exercising that power care must be taken not to interfere with the legislative prerogative, or with the exercise of sound administrative decision.' " *Criminal Injuries Compensation Bd. v. Gould,* 273 Md. 486, 500–502, 331 A.2d 55 (1975) (citations omitted). "[R]elief by way of mandamus [is] properly invoked to review the abuse of discretionary powers by an administrative agency, but only where 'no appeal was provided by statute and the Administrative Procedure Act was inapplicable.' " *State Dep't of Assessments and Taxation v. Clark,* 281 Md. 385, 401, 380 A.2d 28 (1977) (*citing Gould,* 273 Md. at 503–04, 331 A.2d 55).

**7.** SPP § 11–305 states:
(a) *Applicability of section.*—This section only applies to an employee who is in a position:
(1) under a special management appointment; or
(2) in the management service; or
(3) in the executive service.
(b) *Employee at will.*—Each employee subject to this section:
(1) serves at the pleasure of the employee's appointing authority; and
(2) may be terminated from employment for any reason, solely in the discretion of the appointing authority.
(c) *Appeal.*—An employee or an employee's representative may file a written appeal of an employment termination under this section as described under § 11–113 of this title.

(b) *Procedure.*—(1) An employee or an employee's representative may file a written appeal of a disciplinary action with the head of the principal unit.

(2) An appeal:

(i) must be filed within 15 days after the employee receives notice of the disciplinary action;  and

(ii) may only be based on the grounds that the disciplinary action is illegal or unconstitutional.

(3) The employee has the burden of proof in an appeal under this section.

(c) *Conference.*—The head of the principal unit may confer with the employee before making a decision.

(d) *Disposition.*—(1) The head of the principal unit may:

(i) uphold the disciplinary action;  or

(ii) rescind or modify the disciplinary action and restore to the employee any lost time, compensation, status, or benefits.

(2) Within 15 days after receiving an appeal, the head of the principal unit shall issue the employee a written decision.

(3) The decision of the head of the principal is the final administrative decision.

(e) *Expungement of personnel records.*—Within 15 days after issuance of a decision to rescind a disciplinary action, the disciplinary action shall be expunged from the employee's personnel records.

The permitted appeal can "only be based on grounds that the [termination] is illegal or unconstitutional." SPP § 11–113(b). On review, the head of the principal unit may "uphold the [termination]," or "rescind or modify" it as he sees fit. SPP § 11–113(d). But, as Dozier concedes, that decision is "the final administrative decision" and there is no express provision for judicial review contained in SPP § 11–113(d).

Dozier contends, however, that the Administrative Procedure Act ("APA") provides him with a statutory right to

judicial review.[8]  Relying on Maryland Code (1984, 2004 Repl. Vol.), § 10–222 of the State Government Article ("SG"), which authorizes judicial review to "a party who is aggrieved by the final decision in a contested case," he argues that the appropriateness of his termination constituted a "contested case" within the meaning of the APA and the upholding of his termination was the "final decision" in the case.

SG § 10–202(d) defines a "contested case" as:

(d) *Contested case.*—(1)  "Contested case" means a proceeding before an agency to determine:

(i) a right, duty, statutory entitlement, or privilege of a person that is required by statute or constitution to be determined only after an opportunity for an agency hearing; or

(ii) the grant, denial, renewal, revocation, suspension, or amendment of a license that is required by statute or constitution to be determined only after an opportunity for an agency hearing.

(2) "Contested case" does not include a proceeding before an agency involving an agency hearing required only by regulation unless the regulation expressly, or by clear implication, requires the hearing to be held in accordance with this subtitle.

In *Maryland Pharmacists Ass'n, Inc. v. Office of the Attorney General,* 115 Md.App. 650, 656–57, 694 A.2d 492 (1997) (citations omitted), this Court indicated that

the definition of "contested case" was further refined to include only those disputes that, by their nature, entitle a party to an agency hearing, regardless of whether a hearing was in fact held.  The entitlement to an agency hearing does not arise from the Administrative Procedure Act, but must originate from another source such as a statute, regulation, or due process principles.  Thus, in order to

8.  DHR is a department of the Executive Branch subject to the APA. Md.Code (1984, 2004 Repl.Vol.) § 8–104 of the State Government Article ("SG").

decide that a "contested case" existed, we must discern from some other source that the local Association would have ultimately been entitled to an agency hearing on the facts of this case.

The Court concluded that "a 'contested case' is a proceeding before, or dispute with, an agency that entitles a party to an *agency* hearing. The definition of 'contested case' contemplates only an agency hearing. In every instance, S.G. § 10–202(d) limits the scope of contested cases to those proceedings entitling a party to an agency hearing. . . ." *Id.* at 658, 694 A.2d 492.

At oral argument, Dozier contended that his right to appeal his termination was, in effect, an entitlement to an agency hearing within the meaning of the APA.[9] Relying on *Modular Closet Systems, Inc. v. Comptroller of the Treasury,* 315 Md. 438, 444, 554 A.2d 1221 (1989), he argues that no "formal agency hearing" must be held for a case to constitute a "contested case."

In that case, Modular contested the imposition of assessments that had been levied against it by the Comptroller and requested a formal hearing to review the charges. Before an agency hearing could be held on the matter, however, the Comptroller abated the assessment. Modular moved for litigation expenses, arguing that the assessment was imposed without "substantial justification." *Id.* at 443, 554 A.2d 1221. The Comptroller denied the request, and Modular petitioned for judicial review. The Comptroller responded that judicial review was not appropriate because the dispute had not risen to the level of a "contested case."

The Court of Appeals disagreed and concluded that a "formal hearing" need not to have been conducted for there to be a "contested case." *Id.* at 445, 554 A.2d 1221. It indicated that "a dispute resolved prior to a formal hearing may, nonetheless, be a contested case." *Id.* The Court explained

---

9. Dozier does not contend that the discretionary conference was a "contested case" hearing under the APA.

that a dispute is considered a contested case when a statute or regulation "entitles" the party to a hearing. *Id.* at 444, 554 A.2d 1221. Whether the hearing was actually conducted is irrelevant. *See also Donocam Associates v. Washington Suburban Sanitary Comm'n,* 302 Md. 501, 513, 489 A.2d 26 (1985) (indicating that the aggrieved party must have had a right to an agency hearing for there to be a "contested case").

In *Sugarloaf v. Waste Disposal,* 323 Md. 641, 651, 594 A.2d 1115 (1991), the Court indicated that for a proceeding to meet the definition of "contested case" certain "trial type" procedures must be afforded to the complaining party in a hearing. *See also North v. Kent Island Ltd. P'ship,* 106 Md.App. 92, 103, 664 A.2d 34 (1995) (stating that "trial type" procedures must be provided in a "contested hearing"). In *C.S. v. Prince George's County Department of Social Services,* 343 Md. 14, 32, 680 A.2d 470 (1996), the Court indicated that "[o]ne of the key elements of a contested case hearing is whether the entity conducting the hearing acts in an adjudicatory capacity, *i.e.* by determining the facts of the case and applying those facts to some legal standard in order to reach a conclusion."

In fact, SG § 10–208 provides that the following rights are to be afforded in a contested hearing and should be outlined in the Notice of Hearing:

(a) *In general.*—An agency or the Office shall give all parties in a contested case reasonable written notice of the hearing.

(b) *Contents of notice.*—The notice shall state:

(1) the date, time, place, and nature of the hearing;

(2) the right to call witnesses and submit documents or other evidence under § 10–213(f) of this subtitle; [10]

---

**10.** SG § 10–213(f) states:

*Scope of evidence.*—On a genuine issue in a contested case, each party is entitled to:

(1) call witnesses;

(2) offer evidence, including rebuttal evidence;

(3) cross-examine any witness that another party or the agency calls; and

(3) any applicable right to request subpoenas for witnesses and evidence and specify the costs, if any, associated with such a request;

(4) that a copy of the hearing procedure is available on request and specify the costs associated with such a request;

(5) any right or restriction pertaining to representation;

(6) that failure to appear for the scheduled hearing may result in an adverse action against the party; and

(7) that, unless otherwise prohibited by law, the parties may agree to the evidence and waive their right to appear at the hearing.

SPP §§ 11–113 and 11–305 provided Dozier with the right to appeal to "the head of the principal unit." SPP § 11–113(b). In considering his appeal, the head of the principal unit had discretion to confer with Dozier before making a decision. *See* SPP § 11–113(c). There was such a conference, but certainly no "trial type" proceedings. Nothing suggests that the Secretary or the Unit was acting in an "adjudicatory capacity."

Dozier argues that this Court has "implicitly acknowledged" that employees at will who are terminated have a right to judicial review. In *Danaher v. Department of Labor, Licensing, and Regulation,* 148 Md.App. 139, 161, 811 A.2d 359 (2002), we concluded that an employee at will terminated for alleged misconduct is entitled to the procedures outlined in SPP § 11–106 and to judicial review as outlined in SG § 10–222.[11] We did not, however, decide whether an employee at

---

(4) present summation and argument.

11. SPP § 11–106 states:

(a) *Procedure.*—Before taking any disciplinary action related to employee misconduct, an appointing authority shall:

(1) investigate the alleged misconduct;

(2) meet with the employee;

(3) consider any mitigating circumstances;

(4) determine the appropriate disciplinary action, if any, to be imposed; and

(5) give the employee a written notice of the disciplinary action to be taken and the employee's appeal rights.

will who is not terminated for misconduct is entitled to judicial review. Indeed, the issue was not raised in *Danaher*.

The General Assembly has made it quite clear when it intends to afford State employees a "contested case" hearing. For example, SPP § 11–110 provides a skilled service employee with the right to appeal the decision of the "head of the principal unit" to the Secretary. Upon receiving the appeal, the Secretary shall "mediate a settlement" or "refer the appeal to the Office of Administrative Hearings" to conduct a hearing. SPP § 11–110(b). No such right is provided to at will employees. SPP § 11–113(b). Accordingly, we hold that SPP §§ 11–113 and 11–305 did not entitle Dozier to a hearing and that his appeal was not a "contested case" within the meaning of the APA. Therefore, Dozier was not entitled to judicial review under the APA.

## II. Due Process

Dozier also contends that the circuit court's dismissal of his petition for judicial review constituted a denial of his due process rights. He advances two reasons for why we should determine that his constitutional rights to due process were denied: (1) he "had property and liberty interests in his State employment, which were protected by the Fourteenth Amendment of the U.S. Constitution and Article 24 of the Declaration of Rights" and (2) his liberty interests were violated when he was summarily dismissed without an opportunity to respond.

DHR asserts that because these arguments were not raised before the circuit court, they are not properly before us.

(b) *Time limit.*—Except as provided in subsection (c) of this section, an appointing authority may impose any disciplinary action no later than 30 days after the appointing authority acquires knowledge of the misconduct for which the disciplinary action is imposed.

(c) *Suspension.*—(1) An appointing authority may suspend an employee without pay no later than 5 workdays following the close of the employee's next shift after the appointing authority acquires knowledge of the misconduct for which the suspension is imposed.

(2) Saturdays, Sundays, legal holidays, and employee leave days are excluded in calculating the 5-workday period under this subsection.

Indeed, pursuant to Maryland Rule 8–131, we "will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court."

█ Were we to address Dozier's constitutional claims, we would conclude that they are without merit. An entitlement to due process protections is based on a deprivation of a liberty or property interest protected by the Fourteenth Amendment by State action. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *City of Annapolis v. Rowe,* 123 Md.App. 267, 275–76, 717 A.2d 976 (1998). Dozier, as an employee at will, was subject to termination "for any reason, solely in the discretion of the appointing authority." SPP § 11–305. He did not have a property interest in continued employment. *See Elliott v. Kupferman,* 58 Md.App. 510, 520, 473 A.2d 960 (citations omitted) (stating, "As a general rule, a non-tenured State or local government employee who serves 'at will' is *not* regarded as having a property right in continued public employment.").

█ Nor can Dozier prove that his termination violated a constitutionally protected liberty interest in his reputation. In *Board of Regents v. Roth,* the Supreme Court indicated that a public employee's protected liberty interest may be implicated if the employee was terminated for alleged dishonesty. The Court explained:

The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty or immorality. Had it done so, this would be a different case. For '(w)here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' In such a case, due process would accord an opportunity to refute the charge before University officials. In the present case, however, there is no suggestion whatever that the

respondent's 'good name, reputation, honor, or integrity' is at stake.

*Roth,* 408 U.S. at 573, 92 S.Ct. 2701 (footnote omitted) (citations omitted). That case also made clear that the decision not to "renew [a] contract," or, as in this case, to discharge an employee at will, does not raise such constitutional questions. *Id.* at 578, 92 S.Ct. 2701.

At the discretionary conference, Dozier presented a written statement that, "at the meeting of February 23, 2004, 'a statement was made to the general population that the atmosphere of "bondage" could not continue.' " Dozier alleges that the statement was "defamatory and placed [him] in a false light." The alleged defamatory statement was made by Floyd Blair, the Interim Director of BCDSS, several days after Dozier's termination. According to Dozier, Blair said that the "administration had listened to the staff and had freed them from bondage." At most, the statement might discredit Dozier's people skills and management style, but it does not rise to the level of misconduct impugning his honesty or morals that "might seriously damage his standing and associations in his community." *Id.* at 573, 92 S.Ct. 2701. Moreover, it was made after his termination for which there was no stated cause.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**